1   JESSE F. RUIZ (SBN 77984)
2   ROBINSON & WOOD, INC.
    227 North First Street
3   San Jose, CA 95113-1016
    Telephone:  (408) 298-7120
4   Facsimile:  (408) 298-0477

    ORIGINAL FILED
    FEB 1 1 2008
    Richard W. Wieking
    Clerk, U.S. District Court
    Northern District of California
    San Jose

5   Attorneys for Defendants
    PAUL GUMINA, LAW OFFICES OF PAUL L. GUMINA, P.C.,
6   CHARLES LAW, KING & WOOD, L.L.P.

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHER DISTRICT OF CALIFORNIA

10  MIA KIM,                          C08    00900 PVT

11              Plaintiff,            Case No.
                                      NOTICE OF REMOVAL OF ACTION
12       vs.                          UNDER 28 U.S.C. § 1441(B) (FEDERAL
                                      QUESTION)
13  PAUL GUMINA, LAW OFFICES OF
    PAUL GUMINA P.C., CHARLES LAW,
14  KING & WOOD LLP, AND DOES 1 TO
    500, inclusive,
15
                Defendants.
16  _____/

17  To The Clerk of the Above-Entitled Court:

18          Please take notice that defendants Paul Gumina, Charles Law and King & Wood

19  hereby remove to this Court the state court action described below.

20          1.      On December 4, 2007, an action was commenced against defendants Paul

21  Gumina, Law Offices of Paul Gumina, P.C., Charles Law, and King & Wood by way of a

22  Complaint filed in the case in the Superior Court in and for the County of Santa Clara,

23  entitled Mia Kim v. Paul Gumina, et al., Case No. 1-07-CV-100101 (the "State Action").  A

24  copy of the Complaint is attached hereto as Exhibit A.

25          2.      Paul Gumina, King & Wood and Charles Law each signed a Notice and

26  Acknowledgement of Receipt of the summons in the State Action on or about February 6,

27  2008.  The Notice and Acknowledgement for each of these defendants was filed in the State

28  Action on February 8, 2008.  This removal is therefore timely under 28 U.S.C. section

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (FEDERAL QUESTION)

1  1446(b) and *Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.* 526 U.S. 344 (1999). A

2  copy of the Notice and Acknowledgement of Receipt to Paul Gumina is attached hereto as

3  Exhibit B. A copy of the Notice and Acknowledgement of Receipt to Charles Law is

4  attached hereto as Exhibit C. A copy of the Notice and Acknowledgement of Receipt to

5  King & Wood is attached hereto as Exhibit D.

6                                      **JURISDICTION**

7          3.      This action is a civil action of which this Court has original jurisdiction under

8  28 U.S.C. sections 1331 and 1338(a), and is one which may be removed to this Court by

9  the defendant pursuant to the provisions of 28 U.S.C. section 1441(b), in that at least one

10  of the causes of action in the Complaint arises under the federal patent laws and confers

11  federal question jurisdiction. A cause of action arises under the patent laws of the United

12  States if a complaint establishes either that federal patent law creates one of the causes of

13  action or that the plaintiff's right to relief under one of the causes of action necessarily

14  depends on the resolution of a substantial question of federal patent law. *Christiansen v.*

15  *Colt Industries Operating Corp.*, 486 U.S. 800 (1988); *Animal Legal Defense Fund v.*

16  *Quigg*, 900 F.2d 195 (9th Cir. 1990). Defendants submit that plaintiff's cause of action in

17  the Complaint necessarily depends on resolution of a substantial question of federal patent

18  law: infringement of two United States patents, which alleged infringement was the subject

19  of the underlying litigation.

20          4.      Plaintiff's complaint in the present action alleges a single cause of action for

21  legal malpractice. Plaintiff alleges that defendants were retained to represent plaintiff and

22  others in an underlying action in United States District Court, *Hill Design Group v. Spring*

23  *Wang, et al.*, Case No. C04-0521 EMC filed in the Northern District of California.

24  (Complaint 8-10). Plaintiff further alleges that she believed that the underlying case was

25  resolved. (Complaint 16) But in reality, a substantial judgment was entered against her and

26  others after terminating sanctions were awarded in the underlying case. (Complaint 17)

27  Plaintiff alleges that defendants committed malpractice because they failed to advise her

28  regarding conflicts with her co-defendants, failed to protect her individual interests in the

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (FEDERAL QUESTION)

1    underlying case and failed to claim indemnity and/or make a motion to extricate her from

2    the underlying case. (Complaint 11-15.) In order to prevail in her case against defendant

3    attorneys, plaintiff must prove the underlying case would have turned out differently. In a

4    litigation malpractice action, the plaintiff must establish that but for the alleged negligence

5    of the defendant attorney, the plaintiff would have obtained a more favorable judgment or

6    settlement in the action in which the malpractice allegedly occurred. *Viner v. Sweet*

7    (2003) 30 Cal.4th 1232, 1241. Thus, plaintiff must prove that but for the alleged errors

8    and omissions of defendant attorneys, she would have obtained a better result in either

9    judgment or settlement. This necessarily involves a "trial within a trial" to establish that but

10   for the lawyer's negligence the client would have prevailed in the underlying action. *United*

11   *Community Church v. Garcin* (1991) 231 Cal.App.3d 327; *Sukoff v. Lemkin* (1988) 202

12   Cal.App.3d 740, 744.

13       5.     The underlying complaint, United States District Court action number C04

14   0521 EMC contained eleven (11) causes of action, each pleaded against plaintiff and

15   others, including two causes of action for patent infringement and one for federal copyright

16   infringement. Jurisdiction in the underlying case was based on federal question: claims for

17   patent infringement and copyright infringement arising under the patent laws of the United

18   States, Title 35 of the United States Code. (Underlying complaint, 6)  Plaintiff Kim (who

19   was named as a defendant in the underlying complaint) was alleged to have been the Vice

20   President and co-owner of Shen-Tai Industry Co. Ltd. (Underlying complaint 3)  Plaintiff

21   was also alleged to be the agent and employee of each of the other defendants in the

22   underlying case, (Underlying complaint 10) and to have conspired with her co-defendants

23   (Underlying complaint 11-16).  Plaintiff was alleged to have (in concert with the other

24   defendants in the underlying case) infringed upon United States patents by making and

25   selling products designed using two United States design patents.  (Underlying complaint

26   103-112).  Plaintiff was also alleged to have violated the Copyright Act by infringing

27   original designs in their production of outdoor furniture and component designs.

28   (Underlying complaint 113-120)  Plaintiff will have to prove that she would have prevailed

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (FEDERAL QUESTION)

1  on these underlying Patent and Copyright causes of action in order to prove her case against

2  defendant attorneys.

3  ### INTRADISTRICT ASSIGNMENT

4      6.      The State Action was filed in Santa Clara County Superior Court. All of the

5  alleged misconduct in the State Action took place in Santa Clara County. Santa Clara

6  County is within the San Jose Division of the Northern District of California.

7  ### CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

8      7.      Pursuant to Civil Local Rule 3-16, the undersigned certifies that as of this

9  date, other than the named parties, there is no party known to have either: (1) a financial

10  interest in the subject matter in controversy or in a party to the proceeding; or (2) any other

11  kind of interest that could be substantially affected by the outcome of the proceeding.

12  ### JOINDER

13      8.      Defendant Paul Gumina, A Professional Corporation has filed a declaration

14  consenting to joinder in this removal petition.

15      9.      Defendant is informed and believe that Does 1 through 100 are neither real,

16  proper nor necessary defendants and have not been served with the Complaint.

17  Accordingly, the unnamed Doe defendants need not join in this Notice of Removal. *Fristoe*

18  *v. Reynolds Metals Co.* 615 F.2d 1209, 1213 (9th Cir. 1980). This Notice of Removal

19  therefore satisfies the joinder requirements of 28 USC section 1441(a).

20

21  Dated:        February 11, 2008          ROBINSON & WOOD, INC.

22

23                                          By:
24                                              JESSE F. RUIZ
                                              Attorneys for Defendants
25                                            PAUL GUMINA, LAW OFFICES OF PAUL L.
                                              GUMINA, P.C., CHARLES LAW, KING &
26                                            WOOD, L.L.P.

27

28

1

2

PROOF OF SERVICE
*Kim v. Gumina, et al.*, Case #:

I, Sandie Olson, declare:

3

4

5

6

I am a citizen of the United States and a resident of the County of Santa Clara. I am over the age of eighteen (18) years and not a party to the within entitled action. I am employed by Robinson & Wood, Inc., 227 North First Street, San Jose, California, 95113, in the office of a member of the bar of this court at whose direction the service was made. I am readily familiar with Robinson & Wood, Inc.'s practice for collection and processing of documents for delivery by way of the service indicated below:

7

(x)    [BY MAIL] By consigning such copy in a sealed envelope, First Class postage fully prepaid, in the United States Postal Service for collection and mailing

8

9

( )    [BY OVERNIGHT DELIVERY] By consigning such copy in a sealed envelope to an overnight courier for next business day delivery

10

( )    [BY HAND-DELIVERY] By consigning such copy in a sealed envelope to a messenger for guaranteed hand-delivery

11

12

( )    [BY FACSIMILE TRANSMISSION] By consigning such copy to a facsimile operator for transmittal

13

14

On February 11, 2008, in accordance with ordinary business practices at Robinson & Wood, Inc., I caused to be served:

15

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B)
(FEDERAL QUESTION)

16

in the manner identified above on the person(s) listed below:

17

18

19

20

Thomas A. Moore
Noveck & Moore
1622 Ellsmere Avenue
Los Angeles, CA  90019
Phone: 650-575-4991
Fax: 650-887-0402
Attorneys for Plaintiff MIA KIM

21

I declare under penalty of perjury that the foregoing is true and correct.

22

Executed on February 11, 2008, at San Jose, California.

23

24

_____
Sandie Olson

25

26

27

28

Robinson & Wood, Inc.
227 North First Street
San Jose, CA  95113
(408) 298-7120

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (FEDERAL QUESTION)

**Exhibit A**

1 | Thomas A. Moore (S.B.N. #148698)
2 | NOVECK & MOORE
  | 1622 Ellsmere Ave
3 | Los Angeles CA 90019
  | (650) 575-4991
4 | (650) 887-0402

5
  | Attorneys for Mia Kim
6

(ENDORSED)
**FILED**
DEC – 4 2007

KIRI TORRES
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY_____ DEPUTY

M. Rosales

7 | SUPERIOR COURT FOR THE STATE OF CALIFORNIA
8 | IN AND FOR THE COUNTY OF SANTA CLARA
9

10 | Mia Kim,                                    ) Case No.
11 |                                              )
12 |            Plaintiff,                        )
13 |                                              )   1.  LEGAL MALPRACTICE
14 |      vs.                                     )
15 | Paul Gumina,  Law Offices of Paul Gumina P.C., )
   | Charles Law, King & Wood LLP and DOES 1 TO   )
16 | 500, inclusive,                              )
17 |                                              )
18 |            Defendants.                       )

19 | **COMES NOW PLAINTIFF MIA WANG AND DOES HEREBY COMPLAIN AS**
20 | **FOLLOWS:**

21 | <u>**PRELIMINARY ALLEGATIONS**</u>

22 | 1.  Plaintiff Mia Kim (formerly known as Mia Wang) is an individual residing in the State of
23 |     Nevada with her principal place of residence in Clark County Nevada.
24 | 2.  Plaintiff is informed and believes and on that basis alleges that defendant Paul Gumina is an
25 |     attorney practicing law in the state of California, with his principal place of business in San
26 |     Jose and at various times maintained offices located at 125 S. Market Street, Suite 1175, San
27 |     Jose, CA 95113 and 1735 N. First Street, Suite 300 San Jose CA 95112 and is engaged in the
28 |

1

1  practice of law, and acted in the capacity of attorney for Plaintiff at all times mentioned
2  herein.

3   3.  Plaintiff is informed and believes and on that basis alleges that defendant Charles Law is an
4       attorney practicing law in the state of California, with his principal place of business in San
5       Jose and at various times maintained offices located at 125 S. Market Street, Suite 1175, San
6       Jose, CA 95113 and 1735 N. First Street, Suite 300 San Jose CA 95112 and is engaged in the
7       practice of law, and acted in the capacity of attorney for Plaintiff at all times mentioned
8       herein.

9   4.  Plaintiff is informed and believes and on that basis alleges that defendant Law Offices of
10      Paul Gumina P.C. is a law firm practicing law in the state of California, with its principal
11      place of business in San Jose and at various times maintained offices located at 125 S.
12      Market Street, Suite 1175, San Jose, CA 95113 and 1735 N. First Street, Suite 300 San Jose
13      CA 95112 and is engaged in the practice of law, and acted in the capacity of attorney for
14      Plaintiff at all times mentioned herein.

15  5.  Plaintiff is further informed and believes and on that basis alleges that the law firm of King
16      & Wood LLP is a business located in the County of Santa Clara, in the city of San Jose and
17      at various times maintained offices located at 125 S. Market Street, Suite 1175, San Jose, CA
18      95113 and 1735 N. First Street, Suite 300 San Jose CA 95112, and is engaged in the practice
19      of law, and acted in the capacity of attorney for Plaintiff at all times mentioned herein.

20  6.  Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 to
21      500 inclusive, and therefore sue these defendants by such fictitious names. Their true names
22      and capacities are unknown to Plaintiff. When their true names and capacities are
23      ascertained, Plaintiff will amend this complaint by inserting their true names and capacities
24      herein. Plaintiff is informed and believes and thereon alleges that each of the fictitiously
25      named defendants is responsible in some manner for the occurrences herein alleged and that
26      Plaintiff's damages as herein alleged were proximately caused by those defendants. Each
27      reference in this complaint to "defendant," "defendants," or a specifically named defendant
28      refers also to all defendants sued under fictitious names.

## FACTS

7. On or about February 9, 2004, Plaintiff Mia Wang was sued by Hill Design Group, in the Federal District Court for the Northern District of California in case No CV-04-00521 along with her then husband Michael Wang, Spring Wang, and Shen-Tai Industries Co. LTD. and its affiliated and subsidiary companies. Said lawsuit is hereinafter referred to as the HDG Action. Attached hereto and incorporated herein as Exhibit A is a true and correct copy of the complaint, hereinafter referred to as the HDG Complaint.

8. Thereafter Plaintiff's husband contacted and retained defendants, and each of them to represent Plaintiff and the other defendants in the HDG Action.

9. Plaintiff understood that her husband had retained attorneys to represent her and the other defendants in the HDG Complaint, and at all times herein referenced believed that she was being represented by the attorneys her husband had retained, defendants herein.

10. On or about March 30, 2004, defendants filed an appearance in the HDG Action on behalf of Plaintiff Mia Wang and the other defendants in the HDG Action.

11. Thereafter, Plaintiff was never contacted by defendants herein to discuss her rights and obligations as a litigant being personally sued, legal defenses, or the potential for conflicts of interest between herself and the other defendants in the HDG Action.

12. At no time after entering an appearance on her behalf in the HDG Action did defendants ever attempt to contact her and establish any communication, or advise her of the need for her to provide them with contact information so that they could keep in touch with her as the litigation proceeded.

13. Defendants failed to explore any options for seeking have Plaintiff Mia Wang removed from the HDG Action, or to advise Plaintiff of the possibility of filing a motion for summary judgment to have her dismissed from the HDG Action.

14. Likewise Defendants never advised Plaintiff that she was entitled to make a claim for indemnity from the corporate entities that were sued in the HDG Action, nor did they advise her that since she was acting within the course and scope of her employment at all

3

1    times alleged in the HDG Action, that she was immune from personal liability as a matter
2    of law for virtually all the claims contained in the HDG Action.

3  15.    Moreover, as the litigation proceeded, defendants never advised her that her husband and
4    the corporate defendants, who had been handling the defense of the claim for all the
5    defendants sued in the HDG Action were in a conflict of interest with her such that it
6    impaired the ability of defendants to represent all the entities simultaneously.  At no point
7    did defendants ever advise plaintiff that based upon the direction the defense was being
8    driven in, that she was better off obtaining separate counsel to represent her to get a
9    dismissal for her as an individual from the lawsuit.

10  16.    In 2005, Plaintiff separated from her husband, Michael Wang, and had been under the
11    mistaken impression that the lawsuit against her had been resolved.  In fact, it had not been.

12  17.    Plaintiff only learned of the continued existence of the lawsuit against her when she was
13    served with process in an action filed in Las Vegas in March 2007, by The Hill Design
14    Group to collect on a massive judgment of more than 49 million dollars that had apparently
15    been granted only after the Court in the HDG Action had concluded that terminating
16    sanctions were warranted for discovery abuses apparently perpetrated by the other named
17    defendants in the lawsuit, not Mia Wang.  Attached hereto and incorporated herein is a true
18    and correct copy of the judgment entered against all defendants jointly and severally in the
19    HDG Action.  Said judgment is almost entirely for damages for the causes of action that
20    Plaintiff Mia Wang was immune from suit for.  Had defendants herein filed a motion for
21    summary judgment on her behalf, Plaintiff herein would not have been subject to the
22    liability for which the overwhelming majority of the judgment was awarded.

23  18.    Plaintiff later learned that despite being counsel of record at the time of the filing of the
24    motion for terminating sanctions against her and the other defendants in the HDG Action,
25    that defendants herein failed to even oppose the motion for terminating sanctions.  Instead,
26    defendants herein, while still counsel of record, and obligated to protect her interests, not
27    only failed to file any opposition to the motion for terminating sanctions, but in fact filed a
28    motion to withdraw as her counsel, which she was never served with.

4

19.  Plaintiff is informed and believes and thereon alleges that defendants herein had a legal
     obligation to defend against the motion for terminating sanctions since they were her
     counsel of record at the time the opposition to said motion was due to be filed.

20.  Plaintiff is informed and believes and thereon alleges defendants motion to withdraw was
     not granted until after the opposition to the motion for terminating sanctions was due to be
     filed, and as such were her attorneys of record at the time said opposition to the motion for
     terminating sanctions was due to be filed.

## FIRST CAUSE OF ACTION
## LEGAL MALPRACTICE
### (AGAISNT ALL DEFENDANTS AND DOES 1 TO 500)

21.  Plaintiff hereby restates paragraphs 1 through 20 and by this reference incorporates and
     makes a part hereof, the allegations contained therein as though fully restated below.

22.  Defendants, and each of them, and DOES 1 to 500 accepted the representation of Plaintiff
     entering into an attorney client relationship with plaintiff in regards to the defense of the
     claims arising from the HDG Action.

23.  In so doing, defendants, and each of them and DOES 1 to 500 created a reasonable
     expectation that they were offering legal services to plaintiff in relation to the defense of
     the claims arising from the HDG Action.

24.  At all times thereafter defendants and each of them failed to exercise reasonable care and
     skill in undertaking to perform such legal services for Plaintiff.

25.  Had defendants exercised proper care and skill in the foregoing matter, Plaintiff would not
     have been damaged as described more fully above.

26.  As a proximate result of defendants' conduct, Plaintiff has been damaged in an amount to
     be proven at the time of trial.

27.  As a further proximate result of defendant's negligence and the facts herein alleged,
     plaintiff has incurred attorney's fees and costs and damages resulting from defendants'
     malpractice. .

28.  As a direct and proximate result of the breach of the duty to exercise reasonable care in the provision of legal services to plaintiff in connection with the HDG Action plaintiff has incurred special damages according to proof at the time of trial.

Wherefore Plaintiff prays for judgment as follows:

1.  For economic damages according to proof at the time of trial.

2.  For prejudgment interest in an amount to be proven at the time of trial.

3.  For costs of suit herein, and

4.  Such other and further relief as the court may deem appropriate at the time of trial.

Date: December 3, 2007

NOVECK & MOORE

By: _____

Thomas A. Moore
Attorneys for Plaintiff Mia Wang

12/06/2007  11:44    3.  332664          KERRI CAMF    INC              PAGE  14

EXHIBIT



A

12/06/2007  11:44   3  032664          KERRI CAM   INC                    PAGE  15

2/9/04
(3)

1  ROSACK, PINTER & MOORE
2  Thomas A. Moore (S.B.N.#148698)
   Julianne Pinter
3  244 California Street, Suite 300
   San Francisco, CA 94111
4  Telephone: (415) 986-8600
   Facsimile:  (415) 986-8606
5
6  Attorneys for plaintiff
   Hill Design Group
7

8              UNITED STATES DISTRICT COURT
9              NORTHERN DISTRICT OF CALIFORNIA
                  SAN FRANCISCO DIVISION
10
                                    C 04      0521
11  Hill Design Group                )
                                      )   Case No. 837706-3
12        Plaintiff,                  )
                                      )   COMPLAINT FOR DAMAGES
13     vs.                            )
                                      )   1.   Patent Infringement 639 Patent
14  Spring Wang (aka Wang Chun Yueh Lo, )  2.   Patent Infringement 079 Patent
    Wang Lo Chun Yueh, Lo Chun Yueh,  )    3.   Copyright Infringement
15  Chun Yueh Lo, Lo Chun Yoeh, Wang  )    4.   Breach Of Written Contract
    Chun Yoeh Lo, Chun Yoeh Lo, Wang Lo )  5.   Breach Of Oral Agreement
16  Chun Yoeh); Michael Wang (aka     )    6.   Breach Of Implied In Fact Contract
17  Michael Teng-yi Wang, Wang Teng-yi, )  7.   Conspiracy To Induce Breach Of
    Wang T.Y.); Mia Wang (aka Mia Hyon )        Contract
18  Chong Kim); Shen-Tai Industry Co.  )   8.   Fraud-Deceit (Intentional
19  Ltd. (d.b.a. Shen Tai Group, Shen-Tai, )        Misrepresentation)
    Shen-Tai Industries Co. Ltd., Shen-Tai )  9.   Fraud-Deceit (Negligent
20  Industries Co., San Sky Group, San Sky, )       Misrepresentation)
    San Sky Industrial Co., San Sky Industry )  10.  Fraud-Deceit (Suppression Of Fact)
21  Co. Ltd., SanSky Industrial Ltd., Shen-Li, )  11.  Injunctive Relief – Bus. & Prof. Code
22  Shen Li Co. Ltd., ; Styling Plastic )        17200 et.seq.
    Products Co. Ltd., Styling Plastic Industry )
23  Co. Ltd., Styling Plastic Co., Styling )
24  Industrial Co. Ltd., Styling Industry Co. )
    Ltd., Shenta Industrial S.A., Shen-He, )      (JURY TRIAL DEMANDED)
25  Shenhe Luggage Co. Ltd., Room Store.) )
26  and DOES 1 to 500                   )
                                        )
27        Defendants.                   )
                                        )
28

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111

12/06/2007  11:44   3.  ⌐J2664          KERRI CAMF    ₁NC                    PAGE  16

1  **COMES NOW** Plaintiff Hill Design Group and hereby alleges for its Complaint against
2  defendants, as follows:

3
                                    **PARTIES**
4  1. Plaintiff Hill Design Group is a corporation organized and existing under the laws of the State
5     of California, with its principal place of business at 522 Palmer Lane, Menlo Park CA. 94025.
6  2. On information and belief, Defendant **Michael Wang** (aka Michael Teng-yi Wang, Wang
7     Teng-yi, Wang T.Y., and referred to herein after as "Michael Wang") is an individual, who, at
8     all times relevant herein was acting in the capacity of President and General Manager and
9     owner of **Shen-Tai Industry Co. Ltd.** (d.b.a. Shen Tai Group, Shen-Tai, Shen-Tai Industries
10    Co. Ltd., Shen-Tai Industries Co., San Sky Group, San Sky, San Sky Industrial Co., San Sky
11    Industry Co. Ltd., SanSky Industrial Ltd., Shen-Li, Shen Li Co. Ltd., ; Styling Plastic
12    Products Co. Ltd., Styling Plastic Industry Co. Ltd., Styling Plastic Co., Styling Industrial Co.
13    Ltd., Styling Industry Co. Ltd., Shenta Industrial S.A., Shen-He, Shenhe Luggage Co. Ltd.,
14    Room Store).   At all times relevant herein Defendant Michael Wang resided at 3610
15    Woodside Road, Woodside, CA 94062, and is subject to the personal jurisdiction of the
16    District Court for California.
17  3. On information and belief, Defendant **Mia Wang** (aka Mia Hyon Chong Kim, and referred to
18    herein after as "Mia Wang") is an individual, who, at all times relevant herein was acting in
19    the capacity of Vice President and co-owner of **Shen-Tai Industry Co. Ltd.** (d.b.a. Shen Tai
20    Group, Shen-Tai, Shen-Tai Industries Co. Ltd., Shen-Tai Industries Co., San Sky Group, San
21    Sky, San Sky Industrial Co., San Sky Industry Co. Ltd., SanSky Industrial Ltd., Shen-Li, Shen
22    Li Co. Ltd., ; Styling Plastic Products Co. Ltd., Styling Plastic Industry Co. Ltd., Styling
23    Plastic Co., Styling Industrial Co. Ltd., Styling Industry Co. Ltd., Shenta Industrial S.A.,
24    Shen-He, Shenhe Luggage Co. Ltd., Room Store). At all times relevant herein Defendant Mia
25    Wang resided at 3610 Woodside Road, Woodside, CA 94062, and is subject to the personal
26    jurisdiction of the District Court for California.
27  4. On information and belief, Defendant **Spring Wang** (aka Wang Chun Yueh Lo, Wang Lo
28    Chun Yueh, Lo Chun Yueh, Chun Yueh Lo, Lo Chun Yoeh, Wang Chun Yoeh Lo, Chun

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.                    2

1    Yoch Lo, Wang Lo Chun Yoch, and referred to herein after as "Spring Wang") is an
2    individual, who, at all times relevant herein was acting in the capacity of Chairman of the
3    Board, Chief Executive Officer, and owner of **Shen-Tai Industry Co. Ltd.** (d.b.a. Shen Tai
4    Group, Shen-Tai, Shen-Tai Industries Co. Ltd., Shen-Tai Industries Co., San Sky Group, San
5    Sky, San Sky Industrial Co., San Sky Industry Co. Ltd., SanSky Industrial Ltd., Shen-Li, Shen
6    Li Co. Ltd., ; Styling Plastic Products Co. Ltd., Styling Plastic Industry Co. Ltd., Styling
7    Plastic Co., Styling Industrial Co. Ltd., Styling Industry Co. Ltd., Shenta Industrial S.A.,
8    Shen-He, Shenhe Luggage Co. Ltd., Room Store).  At all times relevant herein Defendant
9    Spring Wang resided at 3610 Woodside Rd., Woodside CA. 94062, and is subject to the
10   personal jurisdiction of the District Court for California.
11   5. On information and belief, Defendant **Shen-Tai Industry Co. Ltd.** (d.b.a. Shen Tai Group,
12   Shen-Tai, Shen-Tai Industries Co. Ltd., Shen-Tai Industries Co., San Sky Group, San Sky,
13   San Sky Industrial Co., San Sky Industry Co. Ltd., SanSky Industrial Ltd., Shen-Li, Shen Li
14   Co. Ltd., ; Styling Plastic Products Co. Ltd., Styling Plastic Industry Co. Ltd., Styling Plastic
15   Co., Styling Industrial Co. Ltd., Styling Industry Co. Ltd., Shenta Industrial S.A., Shen-He,
16   Shenhe Luggage Co. Ltd., Room Store, hereinafter referred to as "Shen-Tai"), is a business
17   organized and existing under the law of Taiwan, and at all relevant times, was doing business
18   in the state of California, and is subject to the personal jurisdiction of the District Court for
19   California.  At all relevant times, Shen-Tai's principal place of business was and is: 6th Floor,
20   State Building, 301 Sung Chiang Rd., Taipei, Taiwan 10477
21
22
23
24
25
26
27
28

RUSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111                    Complaint Hill Design Group v. Shen-Tai Industries Ltd, et.al.

3

## JURISDICTION

6. This court has subject matter jurisdiction over causes of action one through three pursuant to 28 U.S.C. §§ 1331 and 1338. This action includes claims for patent infringement and copyright infringement arising under the patent laws of the United States, Title 35 of the United States Code. This Court has jurisdiction of Plaintiff's state law claim found in causes of action four through eleven pursuant to 28 U.S.C. § 1367(a).

## VENUE

7. Venue is proper in this court pursuant to 28 U.S.C. §§ 1391 and 1400, in that Defendant Spring Wang thus reside in, the Northern District of California, and a substantial part of the events giving rise to this action occurred in this judicial district.

## INTRADISTRICT ASSIGNMENT

8. Pursuant to Civil Local Rule 3-2(c), assignment to the San Francisco Division of the U.S. District Court for the Northern District of California is appropriate in that a substantial part of the events and damages giving rise to this action occurred in, the City of Woodside and the county jurisdiction of Menlo Park, in the County of San Mateo California.

## PRELIMINARY ALLEGATIONS

9. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 to 500 inclusive, and therefore sue these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believe, and thereon allege that each of the fictitiously named Defendants is negligently responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by the negligence of these Defendants.

10. Plaintiff is informed and believe, and on that basis allege that, at all times herein mentioned, Defendants, and each of them, was the agent and employee of each of the other Defendants, and.in doing the things herein alleged was acting within the course and scope of such agency and employment and with the permission and consent of his/her codefendants.

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94311

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.                4

11. At all times herein mentioned, Defendants, and each of them, knowingly and willfully conspired and agreed and/or lent aid and encouragement to or ratified and adopted the acts of each of the other Defendants in doing the acts complained of herein below.

12. Defendants and each of them are jointly and severally liable for the acts of each of them committed in furtherance of the conspiracy complained of herein.

13. Defendants, and each of them, are jointly and severally entwined in the acts of each of them committed in furtherance of the conspiracy complained of herein, in law and in equity.

14. At all relevant times herein, Defendants, and each of them knowingly and willfully conspired and agreed among themselves to withhold, and defraud Plaintiff of monies rightfully due to Plaintiff, to infringe Plaintiff's patents as described herein below, to infringe Plaintiff's copyrighted material, without permission, and with the intent to defraud Plaintiff, and to enter into contracts with Plaintiff with the intent to breach those contracts, and or to induce others to breach said contracts, all with the intent to defraud Plaintiff as will be enumerated more fully below.

15. Defendants and each of them did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy and above-alleged agreement.

16. Defendants and each of them furthered the conspiracy by cooperation with or lent aid and encouragement to *or* ratified and adopted the acts of each of the other Defendants in doing the acts and things complained of herein below.

17. In doing the things herein alleged, Defendants acted with malice, oppression, and fraud as defined under Civ. Code § 3294(c).  Defendants were therefore guilty of malice and oppression and fraud in conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

## FACTS COMMON TO ALL CLAIMS

18. On or about April 3, 1996, Defendant Michael Wang as President and General Manager of Shen-Tai Industry Co., Ltd. approached Steven and Roger Hill, the principals of Plaintiff, about the possibility of Plaintiff designing outdoor furniture for Defendants in the U.S. market

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
SF C. 94111

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

5

1   and abroad. Mr. Wang proposed that Plaintiff create designs for use by Defendants, and that

2   if the designs were successful, Plaintiff could make a great deal of money.

3   19. The terms proposed and agreed to at that meeting were as follows:  Defendants would split all

4   profits with Plaintiff, on any new outdoor furniture creations by Plaintiff, sold anywhere in the

5   world.  Profit was to be calculated by subtracting the cost to manufacture of goods sold plus

6   10% of the manufacturing cost for factory overhead, from the sales price obtained (typically

7   the sales price to the retailer or distributor i.e. the wholesale price).  In addition, Plaintiff

8   agreed that it would be responsible for all of its own design costs, including design time,

9   prototypes created in the U.S. and its own administrative overhead and expenses, including

10  travel expenses to Hong Kong and China.  Once in China, Mr. Wang explained to Plaintiff

11  that his factory would provide all the prototyping and help needed to execute Plaintiff's ideas

12  and would further provide Plaintiff with all room and board necessary while there.

13  20. Over time, the agreement between Plaintiff and Defendants broadened to include Plaintiff

14  creating component parts for existing and new lines of furniture sold by Defendants.  It was

15  agreed that Plaintiff would additionally receive a fixed royalty per piece of furniture sold

16  worldwide by Defendants which included components designed by Plaintiff.  The royalty to

17  be paid to Plaintiff per item of furniture sold containing component parts created by Plaintiff

18  was to be negotiated at the time each item was created.

19  21. It was further agreed that Plaintiff would be provided a complete accounting for all its

20  creations, and then payment was to be made to the Plaintiff for its share of the profits and

21  royalties (hereafter referred to simply as "royalties") at the end of each year or by January 1st

22  of the following year.

23  22. On or about April 4, 1996, Roger Hill, on behalf of Plaintiff, sent a written confirmation via

24  fax of the above agreement to Michael Wang, at his home in Woodside, CA.

25  23. Beginning on April 4th, 1996, Plaintiff started designing furniture per the agreement sued

26  hereon.

27

28

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA, 94111

6

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

24. On or about April 9th, 1996, per the agreement, Plaintiff delivered to Defendants its first prototype new chair creation for Michael Wang to present to the top U.S. mass-merchant buyers.

25. On or about April 17, 1996, per the agreement and per Defendants request, Plaintiff made the first of many trips to Defendants' Hong Kong & China facilities, at its own expense, to develop and perfect its ideas and creations into tangible prototypes and to help Defendants sell these creations to mass-merchant buyers. Over the next several years, many of Plaintiff's designs were incorporated into the Defendants' product lines and sold to major mass-merchant stores in the USA and to other accounts worldwide. Furthermore Plaintiff showed Defendants' China factory how to better produce its products, improve its quality control and add Western design-sense, creativity and innovations to its product lines. In addition, Plaintiff introduced Defendants to exciting new areas of business like developing product lines for children's outdoor furniture and adding safety locking devices that would aid to prevent folding furniture from collapsing and injuring consumers. When combined with the many other creations Plaintiff designed and buyers chose, Defendants realized millions of dollars in additional sales over the years because of Plaintiff's association with Defendants.

26. On or about July 11th, 1996 at its own expense, Plaintiff met Defendants and Target store's buyers in Chicago and go to the National Hardware Show in order to see Defendants' competitors' offerings and new designs for outdoor furniture.

27. On or about July 15th, 1996 Plaintiff flew to Fayetteville, AR, at its own expense, to help Defendants sell Plaintiff's new chair creation to the outdoor furniture buyers at Walmart

28. On or about August 15th 1996, Plaintiff, at its own expense, flew to Troy, MI to meet Collins Company, one of Defendants' distributors who was selling a variety of outdoor furniture lines to Kmart Corporation.

29. On or about March 12th, 1997 Defendants asked Plaintiff to do work outside the scope of their agreement, that is to research and purchase a number of Defendants' competitor's products being sold at local mass-merchant stores in California, and to ship these samples to

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111

7

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

1   Defendants' Hong Kong office. Plaintiff informed Defendant that its hourly fee is $75/hour

2   or $600/day and Defendants agree to pay Plaintiff its fees.

3   30. For the 1997 season, Plaintiff earned approximately 42,599.96 dollars in royalties, pursuant to

4   the above agreement, from Defendants' sales of Plaintiff's Kiddy Locking Device installed on

5   chairs made by Defendants; Plaintiff's Buddy Bench, Lifeguard Chair, and Kid's Nylon Chair

6   designs as per Plaintiff's Royalties/Profits Due statement dated March 31, 1998 & written

7   confirmation on this document by Defendant Michael Wang faxed back to Plaintiff on April

8   2, 1998.

9   31. For the 1998 season, Plaintiff earned approximately 53, 823 dollars in royalties pursuant to

10  the above agreement, which were due and payable on January 1, 1999, but which were not

11  fully paid to Plaintiff until March 31, 2001.

12  32. For the 1999 season, Defendant Michael Wang told Plaintiff that no sales of Plaintiff's

13  creations were made, therefore no royalties were due or paid to Plaintiff. Plaintiff is informed

14  and believes and on that basis alleges that this is a false statement, and was uttered with

15  knowledge of its falsity by Defendant Michael Wang at the time he uttered it with the intent to

16  defraud Plaintiff of royalties due it under the agreement described herein.

17  33. In the years 2000 and 2001, sales of Plaintiff's designs for outdoor furniture and components

18  started growing rapidly. During this time, it became increasingly difficult for Plaintiff to

19  obtain accounting statements, and Defendants continued engaging in a pattern of untimely

20  reporting and late payments. To wit, Plaintiff was required to send numerous faxes, and make

21  many phone calls to Defendants to obtain accounting information relative to the sale of their

22  designs worldwide, to demand payment, and to request payment of interest on past due

23  amounts.

24  34. On or about May 1, 2000 Defendant Michael Wang came home to northern California and

25  asked Plaintiff to accompany him to the Walmart Store in Mountain View, CA to view

26  Defendants' own and competitors' lines of outdoor furniture being sold. Plaintiff, for the first

27  time, discovered that its new "adult safety lock" was being sold on Defendants' extensive line

28  of folding chairs, sets, and rockers which Defendants manufactured for Casual Living

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111

8

Worldwide and was sold to Walmart stores nationwide - the Defendants were the OEM (original equipment manufacturer) for Casual Living Worldwide. Plaintiff later discovered that its lock was placed on over 767,488 pieces of Defendants' furniture in its first year of sales. Prior to this, Defendants failed to inform Plaintiff that Walmart had purchased its lock, and in such significant quantities.

35. On May 16, 2000 the U.S. Patent and Trademark Office issued to Plaintiff Steven Hill utility patent number 6,062,639 for a Folding Chair With Integral Safety Feature (Kiddy Locking Device). Plaintiff notified Defendants of patent issued and further requested that this patent number be placed on Defendants' items sold. Defendants never complied.

36. On or about February 1, 2001 Plaintiff received from Defendants an accounting statement of sales made in 2000 using Plaintiff's creations. This statement showed that Plaintiff's creations alone lent to sales of over 16 million dollars ($16,389,882.57) for Defendants. Yet this accounting statement was incomplete as manufacturing costs for various items still needed to be provided by Defendants in order to make the royalty calculations due Plaintiff. The statement was broken down by the names of Defendants' customers who ordered, and further detailed the quantity (sold), FOB price (wholesale sales price), a description name of the item, and a Defendants' issued style number for these creations by Plaintiff.

37. On or about March 16, 2001 while working in the Defendants' China factory, Plaintiff Steven Hill became aware of the fact that Defendants had been selling Plaintiff's creations to large retailers including but not limited to Wal-Mart, Target, and K-mart, other smaller accounts, as well as international accounts that were possibly not showing up on the accounting information received by Plaintiff from the Defendants. Plaintiff's principal, Roger Hill, joined Plaintiff's other principal, Steven Hill, at Defendants' China factory and they confronted Michael and Mia Wang with these discoveries. Defendants claimed that they were not aware of this and further reassured Plaintiffs that their books and records were available for viewing - that most of the information was at their Taipei, Taiwan offices, and the manufacturing costs were at the China factory. Defendants further told Roger and Steve Hill that they should come to Taipei, Taiwan offices to do an audit in order to verify the sales and

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.P. CA. 94111

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

9

accounting reported by Defendants, to clear up these issues and to get paid their now
delinquent royalties. Defendants Michael and Mia Wang agreed to set a date and make these
arrangements for the audit to happen in the following 3- 4 months (summer of 2001) and that
they would advise Plaintiff of an exact date later.

38. On or about April 12, 2001 Defendant Michael Wang requested Plaintiff to document all its
designs in preparation for Taiwan audit and payment of royalties. Plaintiff complied and even
offered ideas to help Defendants simplify and speed up the tracking, accounting, reporting,
and royalty payment process. Defendants never implemented or executed these ideas.

39. On or about April 20, 2001 Michael Wang established May 5-13, 2001 as a good date for the
Plaintiff to come to Taipei, Taiwan for an audit. As this audit date approached, Defendant
Michael Wang advised Plaintiff that he had to leave on business and needed to reschedule the
Taipei audit with Defendants. Plaintiff later tried to establish a rescheduled date in August,
2001, but Defendant Michael Wang advised that August was not good for them.

40. On or about May 11, 2001 Plaintiff was advised that one of the Defendants' key employees,
Clark Feng was leaving the company and that he could not help Plaintiff with audit or
discoveries while in Taiwan. Clark further stated that Defendants Michael & Mia Wang were
the only ones who could help.

41. On or about August 31, 2001 Plaintiff tried to reschedule Taiwan audit for Oct. 1, 2001.

42. On or about October 3, 2001 Plaintiff finally received information from Defendants for
calculating the majority of royalties due on its locking components from year 2000 sales
which were supposed to be due and payable by January 1st, 2001.

43. On or about October 4, 2001 Plaintiff learned that another of the Defendants' key employees,
Richard Lin, with whom Plaintiff closely worked, had left the company.

44. On or about November 29, 2001 Defendant Michael Wang advised Plaintiff that he would be
returning home (Woodside, CA) for the holidays from a business trip in Switzerland, and
would take Roger and Steve Hill back with him to Taipei, Taiwan when he left sometime in
early to mid January 2002 for the audit and to make royalty payments. Plaintiff, tired of
having the promised audit postponed and having to wait for its royalty payments, decided to

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111                10
Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

1    calculate 2000 royalties due for what it knew it was owed i.e. the flat royalties for reported

2    sales of both its locking devices, which also constitute a majority of royalties due.  Plaintiff

3    calculations showed these "partial" royalties due totaled $143,701.90 - reflecting the new

4    "adult safety lock" royalty at $.15 per unit sold as originally agreed to when this creation was

5    submitted to Defendants and in subsequent follow-up correspondence prior to Defendants

6    offer of this item for sale, and its "kiddy locking device" at $.05 per unit sold as previously

7    agreed upon and paid in past years royalties. Plaintiff submitted to Defendants a request for

8    immediate payment of $143,701.90 royalties due.

9    45. On or about December 24, 2001 Defendant Michael Wang falsely, fraudulently, and with

10    intent to deceive claimed that the new "adult safety lock " was negotiated at $.05 per unit sold,

11    not $.15 per unit sold as per Plaintiff's partial royalties due statement.  Defendants then

12    advised Plaintiff that the quantities sold for its chairs equipped with Plaintiff's new "adult

13    safety lock" had to be revised lower and that previous numbers they provided to Plaintiff were

14    only "a sales forecast", all in an effort to continue to forestall the Taiwan audit and reduce the

15    amount of royalties due and payable to Plaintiff.  Defendants then used their employees to

16    embark on a new deceitful series of attempts to alter various terms of the contractual

17    arrangement in order to lower, renegotiate and not pay Plaintiff its just royalties.

18    46. On or about December 28, 2001 Plaintiff provided Defendants with multiple supporting

19    documents to prove that $.15 per unit was the correct amount of compensation requested for

20    this lock.  Plaintiff further responded that it was dumbfounded by the Defendants attempt to

21    revise downward the quantities sold (hence lower royalties due Plaintiff), after so much time

22    has passed, and further requested supporting documentation from Defendants as proof (this

23    proof is never provided).  Plaintiff also made yet another request for Defendants to provide

24    accounting for previous unreported sales of Plaintiffs creations (this accounting has never

25    been provided).

26    47. On or about January 8, 2002 Defendants further stalled payment of royalties by attempting to

27    renegotiate royalties for the new "adult safety lock" to $.05 per unit.   Plaintiff further

28    requested 2001 season royalty statements (which has never been provided).

ROSACK,
PINTER &
MOORE
244 California St,
Suite 300
S.F, CA. 94111    Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

11

48. On or about January 14, 2002 Defendants attempted to claim that some of Plaintiff's creations were actually Defendants' creations. Defendants' employee, Russell Chen, also suggested that Plaintiff try to renegotiate (accept) a lower royalty amount for the "adult locking device" in order for Defendant Michael Wang to approve and expedite the royalty payments to Plaintiff.

49. On or about January 17, 2002 Plaintiff refuted the Defendants' claims to certain designs and again requested that Defendants bring all accounting and royalties current for the past 4 years, and that another date be set for Plaintiff to come to Taipei, Taiwan for an audit.

50. On or about January 28, 2002 Defendants attempted to renegotiate original agreement saying that they did not want to pay royalties for the Buddy Bench (and adult version) because their competitor had created this item before. Plaintiff refuted this claim by showing that Defendants already had established a history of paying Plaintiff a royalty for this creation. Defendants further advised that they now only wanted to pay royalties to Plaintiff for components created, not splitting the profits. Plaintiff again showed that the history of payment under the agreement did not support this and advised that it would not accept being compensated in this reduced manner. Plaintiff then stated that this was not the agreement it has been operating under and refused to give Defendants permission to continue making Plaintiff's creations without splitting the profits as agreed.

51. On or about February 6, 2002 Defendants, through their employees, backed down on these issues and claimed Plaintiff misunderstood. In good faith, in order to end these games, and expedite royalty payments, Plaintiff agreed to offer a compromised royalty for the "adult safety lock" of $.10 per unit (between the $.15 asked for originally by Plaintiff and the $.05 per unit that the Defendants now only want to pay.)

52. On or about February 8, 2002 Plaintiff sent Defendants a Revised Royalty statement with request to pay and wiring instructions for $109,409.79 having recalculated the royalties for the "adult locking device" now at $.10 per unit sold (resulting in a $38,374.40 reduction of royalties due to Plaintiff).

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et al.          12

53. On or about February 23, 2002 Defendant Michael Wang advised that he would not agree to $.10/unit compromise.

54. On or about March 4, 2002 Plaintiff discovered that its new "adult safety lock" is still being sold on Defendants' chairs at Walmart stores and advised Defendants to stop using its lock if it won't pay the $.10 per unit royalty.

55. On or about March 8, 2002 Plaintiff appealed directly to Defendant Michael Wang one last time for payment of $.15 per unit royalty on the new "adult safety lock."

56. On or about March 13, 2002 Defendant Michael Wang agreed to pay Plaintiff $.10/unit for the new "adult safety lock" and furthermore agreed to pay royalties due by wire of funds to Plaintiff's account with a couple of days.   Defendant Michael Wang also confirmed that Plaintiff could come to Taipei, Taiwan for the audit toward the end of April.

57. On or about March 18, 2002 Defendants further attempted to condition their agreement to pay the $.10 per unit by saying that it would only pay this higher amount for one season and that it then only will pay $.05 per unit thereafter.  Plaintiff refused to agree to this and made another demand for payment to which Defendants replied that they would not make a royalty payment at this time since it was their desire to only issue one wire for payment instead of two for the 2000 season royalties due. As Defendants had not provided the costs for figuring out the remaining calculations for royalty payments to Plaintiff, they attempted to further stall the royalty payment by stating they wished to wait until they could figure out those costs and send Plaintiff all money owed at one time.

58. On or about March 22, 2002 Plaintiff received a phone call from Defendants' employee Russell Chen, saying that Defendant Michael Wang agreed to pay $.10 per unit for the "adult safety lock," but that new accounting information had been generated revising sales of Plaintiffs' lock downward for the (2000 season) 2001 royalties due, and did so without providing, despite many requests, any written documentation to justify said recalculations by Defendants. Defendants additionally further attempted to reduce the royalty calculation by deducting a 20% manufacturing overhead cost from the profits instead of the previously

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111

13

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et al.

1  agreed upon 10%.  Defendants made the erroneous recalculation and reported that the
2  royalties due Plaintiff were just $88,164 (originally started out at $143,701.90).
3  59. On or about March 25, 2002 Defendants' employee, Russell Chen, advised that he was
4  waiting for Defendant Michael Wang's authorization to wire funds to Plaintiff.  Plaintiff
5  advised Defendants that the calculation is incorrect.
6  60. On or about April 11, 2002, Plaintiff received a revised 2001 royalty statement (2000 season)
7  and promise to pay Plaintiff royalties in the amount of $97,269.92 which was still erroneously
8  calculated – this time deducting 15% for overhead instead of the previously agreed upon 10%
9  61. On or about April 29, 2002 Plaintiff advised that the overhead calculation was still incorrect
10  and recalculated the royalty statement to reflect royalties due using the correct 10% deduction
11  for overhead.  With the recalculations and other reimbursable expenses owed to Plaintiff, the
12  corrected statement showed receivables due Plaintiff in the amount of $108,797.06.  Plaintiff
13  again demanded payment.
14  62. On or about May 9, 2002 Defendants requested that Plaintiff sign the royalty statement and
15  invoice stating that "calculations for the period are correct."  Plaintiff did so and additionally
16  added a statement that full documentation was to be provided by Defendants in order to
17  substantiate and verify their claims for a reduced royalty calculation.
18  63. On or about May 21, 2002 Defendants requested a copy of Plaintiff's (California) Articles of
19  Incorporation for its accounting department records before payment could be made.  Plaintiff
20  complied.
21  64. On or about June 1, 2002 Defendant's key employee, Russell Chen, who dealt with Plaintiff
22  on a daily basis left the employment of Defendant.
23  65. On or about June 22, 2002, Defendant Michael Wang continued to stall providing
24  documentation and payment of royalties to Plaintiff by utilizing a deceitful new approach ie.
25  to fabricate a number of problems with the company.  He made the first of many excuses why
26  Defendants could not pay, the above amount.  In particular, he advised Plaintiff that
27  Defendants were being investigated by the Taiwanese Tax Board, and could not pay until this
28  issue got cleared up.  He further stated that per the Taiwanese IRS, Defendants could not pay

ROSACK,
PINTER &
MOORE
144 California St.
Suite 300
S.F. CA. 94111
Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.          14

1  a design company (Plaintiff) a royalty. Defendant Michael Wang then requested that Plaintiff

2  draft a Royalty Agreement to show to the Taiwanese IRS the agreement it had with Plaintiff

3  and further asked Plaintiff to put the original agreement date on it (April 4, 1996). Defendant

4  Michael Wang also requested that Plaintiff provide a "dummy invoice" for the $13,668.84 it

5  previously wired as partial royalty payment to a creditor of Plaintiff. Defendant Michael

6  Wang further informed Plaintiff that Defendants were no longer making and selling Plaintiff's

7  creations, since Casual Living Worldwide had taken over the design process.

8  66. On or about July 11, 2002 Defendant Michael Wang informed Plaintiff that Defendants were

9  required to go to arbitration on the Taiwan IRS audit issue and could not pay Plaintiff until the

10  arbitration was completed.

11  67. On or about September 1, 2002 Defendant Michael Wang called Plaintiff to advise that he had

12  set September 24, 2002 as a good date for Plaintiff to come to Taipei for the audit and to get

13  paid their royalties due.

14  68. On or about September 30, 2002 Defendant Michael Wang called Plaintiff from the Ritz

15  Carlton Hotel in Florida to inform Plaintiff that he and Defendant Mia Wang were attending a

16  wedding there for a Casual Living's executive and could not make the Taiwan audit, therefore

17  he needed to reschedule the audit for sometime in January, 2003. He informed Plaintiff that

18  the Taiwan audit/arbitration had been concluded but that Defendants did not have the money

19  to pay Plaintiff as promised, and had to wait for its accounts receivable to come in, in January,

20  and that they will have approximately $20 million in accounts receivables being paid to them

21  around Chinese New Year (end of Jan or early Feb. of 2003).

22  69. On or about October 15, 2002 Plaintiff appealed to Defendant Mia Wang, wife of Michael

23  Wang & Shen Tai Vice President heading up their San Sky, Hong Kong office, who replied

24  that she did not know why Michael Wang was not paying Plaintiff, but reassured Plaintiff that

25  they would eventually get paid.

26  70. On or about October 21, 2002 Plaintiff requested supporting documents to verify lowered

27  royalties reported by Defendant for 2001 (2000 season). Plaintiff again requested delinquent

28  royalty statement for 2002 (for the 2001 season which was due and payable on January 1st,

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

15

1    2002), plus supporting documents and payment by 1/31/03. Plaintiff further requested

2    documentation and payment for previous unreported sales of Plaintiff's creations, plus interest

3    on all past due amounts at 6%.

4    71. On or about October 28, 2002 Defendant Michael Wang informed Plaintiff that Defendants

5    were applying for a line of credit from Bank of China in order to pay Plaintiff.

6    72. On or about November 12, 2002 Defendant Michael Wang informed Plaintiff that the Bank of

7    China issued Defendants the loan and that they were trying to get approval from the

8    headquarter of China Bank.

9    73. On or about December 2, 2002 Plaintiff received notice of allowance of utility patent for its

10    "adult safety lock" entitled Folding Furniture Hinge/Locking Device.

11    74. On or about December 21, 2002 Michael Wang informed Plaintiff that Defendants' loan

12    application was denied, but not to worry, and promised to pay Plaintiff by February 2003 as

13    Defendant would have $20 million in accounts receivable paid at that time and when they

14    received those funds they could then pay Plaintiff. Plaintiff further informed Defendant

15    Michael Wang that the U.S. Patent and Trademark office had allowed its patent for the "adult

16    safety lock".

17    75. On or about January 2, 2003 Defendant Michael Wang wrote to Plaintiff that under

18    US/Taiwan law Defendants could only pay royalty on patented items as per the advice of

19    Defendants' attorney and requested copies of Plaintiff's patents.

20    76. On or about January 10, 2003 Plaintiff personally met with Defendant Michael Wang at the

21    home of Steven and Roger Hill in Menlo Park, California explaining the hardships Defendants

22    non-payment of royalties has caused them personally and professionally; that Defendants

23    proposal to only pay royalties based on items patented by Plaintiff was never the agreement

24    Defendant and Plaintiff had; and that their prior history together and payments prove this.

25    Defendant Michael Wang informed Plaintiff that it was his mother, Spring Wang, the

26    Chairman & CEO of the Defendants who refused to pay the amounts due and owing Plaintiff,

27    and she had cut off his ability to access their bank accounts and make wire of funds to

28    Plaintiff. Plaintiff advised Michael Wang that it would call a meeting with his mother and

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

16

1    straighten this out with her and demand payment. Michael Wang supported Plaintiff's idea,
2    and acknowledged that it should call a meeting with his mother. Defendant Michael Wang,
3    further attempted to distance himself from the situation, then informed Plaintiff that he now
4    owned the China factory and that he had bought it from his mother; and that she and Shen-Tai
5    were the reason Plaintiff was not getting paid. Yet Michael Wang promised to work this out
6    with her and to pay Plaintiff by March 2003. Michael Wang further established March 2003
7    as a good time for Plaintiff to come to Taipei to audit their records. Michael Wang requested
8    Plaintiff's help in convincing his mother that she had to pay Plaintiff by providing him with
9    "proof" in the form of patents and intellectual property protection that Plaintiff has secured.
10   Plaintiff provided Michael Wang with its issued and pending intellectual property
11   documentation i.e. Utility patent for Kiddy Chair locking device, utility patent application for
12   Adult Chair locking device, and copyright applications.

13   77. On or about January 20, 2003 Plaintiff drafted an agreement to pay by end of March 2003 and
14   requested the signature of Defendant Michael Wang on this document.

15   78. On or about February 10, 2003 Defendant Michael Wang altered Plaintiff's agreement to pay
16   document with the wording that Defendants would only do so if they are cash flow positive
17   and further requested that his mother, Spring Wang's signature be added to Plaintiff's
18   "agreement to pay" document so that she could sign off on it as well.

19   79. On or about February 11, 2003 Plaintiff complied with February 10, 2003 requests of
20   Defendant Michael Wang to redraft the agreement to pay adding his mother, Spring Wang as
21   a signor to the agreement, but refused to put in the clause stating that Defendants will pay
22   only if cash flow positive.

23   80. On or about February 11, 2002 Plaintiff telephones Sharon Wang (sister of Defendant
24   Michael Wang, sister-in-law of Defendant Mia Wang, and daughter of Defendant Spring
25   Wang) at the Wang family home in Woodside, CA. Plaintiff explained how it had not been
26   paid its royalties, that these royalties were now severely past due, nor had it been provided
27   proper accounting, and that Michael Wang was now saying that it was their mother, Spring
28   Wang who did not want to pay Plaintiff. Plaintiff then advised that it was faxing over to her

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111    Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

17

1    at their Woodside, CA home, very urgent and important documents, including an "agreement

2    to pay" document for their mother's review & signature and would appreciate Sharon's help

3    in translating, if necessary, and forwarding these documents at once to her mother.  Sharon

4    Wang agreed to personally speak to her mother at once about these issues, to translate and to

5    forward the correspondence to her mother at once.

6    81. On or about 11:58 pm on the evening of February 11, 2003 Defendant Michael Wang called

7        and left a voice message on Plaintiff's answering machine stating that he was aware that

8        Plaintiff sent the redrafted "agreement to pay," that he would be back at the Taiwan office the

9        next day to review it and respond accordingly - that he would either bring it for his mother to

10       sign or sign it himself.

11   82. On or about February 12th, 2003 at 7:09 pm Defendant Michael Wang left another voice

12       message on Plaintiff's answering machine stating that they would have to reschedule the early

13       March audit in Taiwan because the major retailers were coming during that time period and

14       that they would be extremely busy for the next 3 weeks.  He further advised that now that he

15       was back in the Taiwan Office he would have Defendants sign Plaintiff's "agreement to pay,"

16       and would check with his accounting department to see if they still had everything on

17       schedule to pay Plaintiff, and that he would have his mother and himself sign the "agreement

18       to pay" and send it back to Plaintiff with a company stamp on it.

19   83. On or about February 20th, 2003 Plaintiff confirmed that it made contact with Spring Wang

20       through her daughter Sharon Wang at their Woodside, California.

21   84. On or about February 23rd, 2003 Plaintiff issued Defendants a Cease & Desist order and

22       notice of legal actions to be taken.

23   85. On or about February 27th, 2003 Defendant Michael Wang called Plaintiff from Shanghai

24       China to say that he was working with buyers there and would return in a couple of days to

25       Taipei and that his mother was also traveling and should be back by the time he returned in

26       order to talk with her and convince her to pay.

27   86. On or about March 7th, 2003 Defendant Michael Wang called to inform Plaintiff that his

28       mother was not yet back from her trip but that she agreed to review this matter on March 19th

ROSACK,
PINTER &
MOORE .
244 California St.
Suite 300
S.P. CA. 94111

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

18

1    · when she returned.  He again requested that Plaintiff fax the patents and copyright documents

2    that Plaintiff held in order to show his mother and convince her that she needed to pay

3    Plaintiff.  He also stated that because of buyers coming end of March, early April that it would

4    be better for Plaintiff to come for Taipei audit around end of April, early May.  He stated that

5    it was his job to get Plaintiff paid by end of March or first of April and would get back to

6    Plaintiff, hopefully, with good news on March 20th, 2003, and wanted to know how best to

7    send the money.

8    87. On or about March 15th, 2003 Plaintiff supplied 20 pages of patent and copyright

9    documentation to Defendant Michael Wang and further provided wiring instructions for

10   sending the royalty payment.

11   88. On or about March 17th, 2003 Defendant Michael Wang left another voice message on

12   Plaintiff's answering machine advising that he had convinced his mother that Defendants

13   needed to pay Plaintiff and would do so by the end of the month.  He further qualified this by

14   stating that their attorney was still advising his mother that they were only required to pay

15   Plaintiff based on the patents it had received and to provide such documents.  Once he

16   received this, he advised, he would take care of paying Plaintiff by the end of the month.

17   Based on this information Plaintiff calculated interest due over this protracted period just for

18   2001 royalty statement (for 2000 sales) to be $8,498.99 and requested that this additional

19   interest be paid and further requested that travel arrangements be made to bring Plaintiff to

20   Taiwan for the audit by end or April/first of May as per Michael Wang's scheduling.

21   89. On or about March 20th, 2003 Defendant Michael Wang wrote Plaintiff that, for now, he was

22   only authorized to pay Plaintiff royalties for 2 patents owned by Plaintiff and that his mother,

23   Defendant Spring Wang, further requested that Plaintiff sign a contract stating that from

24   March 1st, 2003 forward, Defendants would end the design relationship with Plaintiff, and that

25   no more royalty fee liability would be due whatsoever.  He further stated that he would make

26   sure that Plaintiff received just the royalties based on patented items by the first of the month

27   and that Defendants and Plaintiff could work out the rest later.  Plaintiff responded that this

28

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111

19

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

1    was never their agreement together, that the history of royalty payments made by Defendants

2    to Plaintiff further prove this.

3    90. On or about March 21st, 2003 Defendant Michael Wang responded, stating that he knew how

4    Plaintiff felt; that he was a partner of Plaintiff's team; that in the past he had control of the

5    checkbook but 2 years ago, since 2001, his mother had taken over financial control. He

6    further stated that he was not playing games with Plaintiff and would have paid it way back

7    when but then he lost power to his mother (Defendant Spring Wang). He further stated that

8    now their lawyer was involved and they were trying to limit what they had to pay Plaintiff.

9    He offers up a deceptive suggestion, that Plaintiff should not argue with his mother her, (sign

10   their agreement) so that she would cut Plaintiff the first check for royalties on patented items

11   and then address the future (the remainder of royalties due Plaintiff) later.

12   91. On or about March 23rd, 2003, acting in good faith upon Defendant Michael Wang's

13   suggestion and in an attempt to collect some money immediately, Plaintiff calculated the

14   royalties due on just the patented items, advised Defendant Michael Wang that the amount

15   owing was $94,488.94, and further requested immediate payment per his promise. Plaintiff

16   also conditioned, clarified, and reiterated, per Michael Wang's suggestion, that Defendants

17   and Plaintiff would address the remaining royalties due after April 1st audit in Taiwan.

18   92. On or about March 24th, 2003 Plaintiff called the Wang family home in Woodside, CA and

19   spoke directly to Defendant Spring Wang who confirmed that she received Plaintiff's

20   information from her daughter Sharon. Plaintiff requested a personal meeting in order to

21   settle this matter and get paid. Defendant Spring Wang agreed to meet Plaintiff at her home

22   the next day.

23   93. On or about March 25th, 2003 U.S. Patent and Trademark office issued Plaintiff Steven Hill

24   Utility Patent #6,536,079 for a Folding Furniture Hinge/Locking Device (Adult Locking

25   Device).

26   94. On or about March 25th, 2003 Plaintiff met with Defendant Spring Wang at her home in

27   Woodside, CA with her daughter Sharon Wang present and to interpret as necessary. Plaintiff

28   laid out and delivered its entire history working with Defendants recapped in a written

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

20

1  correspondence cover page to Mrs. Spring Wang dated 3/25/03; Plaintiff also brought its very
2  thick file of correspondence and renderings of all creations made for Defendants over the past
3  6 years per the agreement; provided supporting documentation of its relationship, agreement,
4  and royalty arrangements/calculation formula; proof of previous royalty payments; invoice
5  #51202 dated 5/12/2002 of 2001 royalties (for the 2000 season), reimbursable expenses and
6  interest due in the amount of $121,818.84.  Plaintiff explained that her son, Defendant
7  Michael Wang had stated that she was the reason Plaintiff had not been paid.  Plaintiff further
8  explained that an audit of their records was necessary to determine all royalties owed Plaintiff
9  as a complete accounting/documentation had never been provided.  Spring Wang responded
10  by telling Plaintiff that she wanted pay Plaintiff as promised and that she would call her son,
11  Defendant Michael Wang to confirm these details first.

12  95. On or about March 28, 2003 Plaintiff informed Defendant Michael Wang that it had a very
13     good meeting with his mother, Spring Wang; that she agreed it should get paid and it should
14     be brought to Taiwan to audit the records and straighten out all royalties due by April or first
15     part of May; and that she just needed to confirm these details with Michael Wang in order to
16     pay Plaintiff.

17  96. On or about March 30th, 2003 at 7:56pm Defendant Michael Wang left another voice message
18     on Plaintiff's answering machine informing Plaintiff that he did not know what was discussed
19     with his mother but now she wanted him to put the whole matter on hold until she got back to
20     Taipei; that she would personally review each issue before taking care of Plaintiff.  Defendant
21     Michael Wang further stated that he had $65,000 ready to wire to Plaintiff, and now his
22     mother wanted to put a stop on it, that it was not his fault, and now that his mother wanted to
23     get involved that it would drag this thing on another 2-3 months at least.  He stated that his
24     mother had a right to "step on it," that she probably misunderstood Plaintiff, and wanted to get
25     everything straight and cleared up in Taiwan before paying Plaintiff so that she did not have
26     any repercussions afterward.

27  97. On or about March 31, 2003, Defendant Michael Wang then sent a letter to Plaintiff
28     reiterating his March 30th phone conversation.  He then faxed and requested that Plaintiff sign

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F., CA, 94111          Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.                    21

1    another document/agreement regarding "royalties concerning Design Patents" and stated that

2    based upon Plaintiff's Patent information, the total royalty fee due was $65,000 and that it

3    would only reimburse Plaintiff for the chair that it purchased at Target stores (not the China

4    hotel cost or work it did on the Dale Bowles, Walmart case, and no interest on past due

5    amounts).  He further added to the agreement that if there is any disagreement that both

6    parties will seek legal arbitration in Taiwan jurisdiction, and that payment would be made

7    within 7 days of signing this agreement.

8    98. On or about April 2, 2003 Plaintiff made the rounds of the local mass-merchant stores and

9    found several of its creations still being sold by Defendants, in spite of Michael Wang's

10    representations the previous summer that it had stopped selling Plaintiff's creations.  Plaintiff

11    discovered its following items being sold 1) at Target stores – its utility patented locking

12    device used on children's folding furniture (kiddy lock), its armrest design, its Buddy Bench,

13    its Beach chairs; and 2) at Kmart stores- its locking device for childrens folding furniture

14    (kiddy lock).  All these products carried the Defendants' company information i.e. swing tags

15    or labels with the Shen Tai or San Sky company names and country of manufacture - China.

16    99. On or about April 11, 2003, Plaintiff issued Defendants by fax and U.S. registered mail a 4

17    page letter to again Cease and Desist with additional Notice of Actions to be taken against the

18    Defendants, their accounts and trading partners who are now selling Plaintiff's infringed

19    creations; a 3 page Cease & Desist Demand dated April 10, 2003; a copy of Defendants'

20    revised calculations on royalties due Plaintiff for $97,269.92 with their promise to pay dated

21    April 4, 2002; and sample action letters to be sent to their valued mass-merchant accounts –

22    Trivest/Brown Jordan/Casual Living Worldwide, Target, Kmart, Wal-mart.  Plaintiff further

23    requested $200,000 be wired to it by April 21st, 2003 to avoid Plaintiff initiating the above

24    stated actions.  Plaintiff further stated that this $200,000 was a conservative estimate of the

25    royalties due and further requested that arrangements be made for it to go to Taipei for an

26    audit to determine the exact total amount, with final payment for all the royalties past due by

27    1st part of June.  Plaintiff further stated that it felt it was reasonable to assume that they are

28

ROSACK,
PINTER &
MOORE
244 California St.
Suite 200
S.F., CA. 94111

Complaint Hill Design Group v. Shen-Tai Industries Ltd, et.al.                    22

1  owed 3x the 2001 royalties (2000 season) due of $121,818.184 or $365,456.52 so their request

2  for $200,000 at this time was fair.

3  100.  On or about April 15, 2003 Defendant Michael Wang wrote back to Plaintiff that it should

4  calm down on this issue and further stated that Defendants don't deny that Plaintiff did design

5  work for them, their only disagreement was that they feel only patented items deserve a

6  royalty payment. He further threatened Plaintiff that if it wished to take these unwise actions

7  then it would have to be prepared to go to court in Taiwan, that it would take 5 years before

8  there was a verdict, and it would cost Plaintiff at least $250,000. He further threatened that

9  Plaintiff would be put on a black list with U.S. mass-merchant buyers, and assumed that it

10  received illegal payments from Defendants which would cause a problem with IRS in USA.

11  He stated that the only thing Plaintiff should do is wait until his mother got back to Taipei to

12  go over the case, then decide how she wanted to pay Plaintiff.

13  101.  On or about June, 6, 2003 Plaintiff went onto the internet and performed search for Shen

14  Tai, Taiwan. It found Shen-Tai's website at: http://www.shentai.com/english/profile.htm.  It

15  discovered that several of its creations are featured under Outdoor Furniture (camping) its 1)

16  Folding Bench (item #RC-2009-F3C), 2) Strap Lounge Chair (item #RL-3104-F2A), and

17  under Outdoor Furniture (Kiddy Chair) its 3) Folding Bench (item #RK-1009-F1P) and 4)

18  Swing (item #RK-9608-F4P).

19  102.  Plaintiff is informed and believes and thereon alleges that Defendants have conspired over a

20  period of years, to engage in unfair, deceptive business practices, to defraud Plaintiff of

21  royalties, and earnings on all its creations - patented and copyrighted designs, and un-patented

22  designs - belonging to Plaintiff, by underreporting sales, not reporting sales, and utilizing

23  Plaintiff's designs without permission of Plaintiff.

24
25
26
### FIRST CAUSE OF ACTION
### FEDERAL PATENT INFRINGEMENT
### (INFRINGEMENT OF THE 639 PATENT)
### 35 U.S.C. § 271
### (AGAINST ALL DEFENDANTS AND DOES 1 TO 500)

27  103.  Plaintiff hereby restates paragraphs 1 through 102, and by this reference incorporates and

28  makes a part hereof, the allegations contained therein as though fully restated below.

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA, 94111

23

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

104.  On May 16, 2000, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 6,062,639 ("the 639 Patent" and previously referred to as the "Kiddy /Kiddie Locking Device or "Kiddy/Kiddie Lock"), entitled FOLDING CHAIR WITH INTEGRAL SAFETY FEATURE, to Steven G. Hill. Plaintiff is the owner, by valid assignment, of all right, title and interest in the 639 Patent. A copy of the 639 Patent is attached to the Complaint as Exhibit A.

105.  Upon information and belief, Defendants have been, and currently are, directly and indirectly infringing the 639 Patent by making, using, marketing, selling, reselling, offering for sale, and/or inducing others to use, sell, market, resell, and offer for sale products designed using the 639 patent design.

106.  Upon information and belief, Defendants have actual and constructive knowledge of the 639 Patent since at least May 24th, 2000, and Defendants' infringement of the 639 Patent has been willful, and will continue unless enjoined by this court. Pursuant to 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement.

107.  As a direct and proximate consequence of Defendants' infringement of the 639 Patent, Plaintiff has suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which Plaintiff is entitled to relief. Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to damages for infringement and treble damages.

## SECOND CAUSE OF ACTION
## FEDERAL PATENT INFRINGEMENT
### (INFRINGEMENT OF THE 079 PATENT)
### 35 U.S.C. § 271
### (AGAINST ALL DEFENDANTS AND DOES 1 TO 500)

108.  Plaintiff hereby restates paragraphs 1 through 107, and by this reference incorporates and makes a part hereof, the allegations contained therein as though fully restated below.

109.  On or about March 25, 2003, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 6,536,079 ("the 079 Patent" and previously referred to as the "Adult Locking Device" or "Adult Lock"), entitled FOLDING FURNITURE HINGE/LOCKING DEVICE, to Steven Gene Hill.  Plaintiff is the owner, by valid

ROSACK,
PINTER &
MOORE
244 California St,
Suite 300
S.F. CA. 94111

24

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

1   assignment, of all right, title and interest in the 079 Patent. A copy of the 079 Patent is
2   attached to the Complaint as Exhibit B.

3   110.  Upon information and belief, Defendants have been, and currently are, directly and
4   indirectly infringing the 079 Patent by making, using, marketing, selling, reselling, offering
5   for sale, and/or inducing others to use, sell, market, resell, and offer for sale products designed
6   using the 079 patent design.

7   111.  Upon information and belief, Defendants have actual and constructive knowledge of the 079
8   Patent since at least January 10th, 2003, and Defendants' infringement of the 079 Patent has
9   been willful, and will continue unless enjoined by this court. Pursuant to 35 U.S.C. § 283,
10  Plaintiff is entitled to a permanent injunction against further infringement.

11  112.  As a direct and proximate consequence of Defendants' infringement of the 079 Patent,
12  Plaintiff has suffered and will continue to suffer irreparable injury and damages in an amount
13  not yet determined for which Plaintiff is entitled to relief. Pursuant to 35 U.S.C. § 284,
14  Plaintiff is entitled to damages for infringement and treble damages.

15
16  **THIRD CAUSE OF ACTION**
    **FEDERAL COPYRIGHT INFRINGEMENT**
    **17 U.S.C. §§ 101 et. seq.**
17  **(AGAINST ALL DEFENDANTS AND DOES 1 TO 500)**

18  113.  Plaintiff hereby restates paragraphs 1 through 112, and by this reference incorporates and
19  makes a part hereof, the allegations contained therein as though fully restated below.

20  114.  Plaintiff is the owner of certain copyrighted outdoor furniture and related component
21  designs, attached hereto as Exhibit C and has the exclusive right to copy, distribute and
22  transmit them.  Plaintiff's outdoor furniture and component designs are original works,
23  copyrightable under the Copyright Act.

24  115.  At all times relevant herein, Plaintiff has complied with the Copyright Act, 17 U.S.C. §§
25  101, et seq., and has secured the exclusive rights and privileges in and to the copyrights in
26  Plaintiff's outdoor furniture and component designs.

27  116.  Defendants have, without authorization from Plaintiff, copied, distributed, disseminated
28  and/or otherwise exploited unauthorized copies of Plaintiff's outdoor furniture and component

ROSACK,
PENTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111

1  designs.  Plaintiff has not licensed any of the Defendants to reproduce or distribute any of
2  Plaintiff's outdoor furniture and component designs in any manner whatsoever.

3  117.  Defendants' acts constitute direct and/or contributory infringements of Plaintiff's respective
4  copyrights in Plaintiff's outdoor furniture and component designs in violation of 17 U.S.C. §§
5  101, *et seq.*

6  118.  Upon information and belief, Defendants' infringements have been committed willfully, and
7  have been and are being engaged in with total disregard for Plaintiff's intellectual property
8  rights.

9  119.  Defendants' direct and/or contributory copyright infringement has caused, and will continue
10  to cause, Plaintiff to suffer substantial injuries, loss and damage to their exclusive rights in
11  Plaintiff's outdoor furniture and component designs. The precise amount of Plaintiff's
12  damages is difficult, if not impossible, to ascertain.

13  120.  Defendants' direct and/or contributory copyright infringement, and the threat of continuing
14  infringement, has caused, and will continue to cause, Plaintiff severe and irreparable injury.
15  Plaintiff's remedy at law is inadequate to compensate them for the injuries already inflicted
16  and further threatened by Defendants. Therefore, Defendants should be enjoined pursuant to
17  17 U.S.C. §§ 101, *et seq.*

18                          **FOURTH CAUSE OF ACTION**
19                              **BREACH OF CONTRACT**
20               **(AGAINST ALL DEFENDANTS AND DOES 1 TO 500)**

21  121.  Plaintiff hereby restates paragraphs 1 through 120, and by this reference incorporates and
22  makes a part hereof, the allegations contained therein as though fully restated below.

23  122.  On or about April 3, 1996, Defendant Michael Wang as President and General Manager of
24  Shen-Tai Industries. Co., Ltd. approached Steven and Roger Hill, the principals of Plaintiff,
25  about the possibility of Plaintiff designing outdoor furniture for Defendants in the U.S. market
26  and abroad. Mr. Wang proposed that Plaintiff create designs for use by Defendants, and that
27  if the designs were successful, they could make a great deal of money.

28  123.  The terms proposed and agreed to at that meeting were as follows:  Defendants would split
   all profits with Plaintiff, on any new outdoor furniture creations by Plaintiff, sold anywhere in

ROSACK,
PINTER &
MOORE
244 California St.,
Suite 300
S.F. CA. 94111

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.                26

1  the world. Profit was to be calculated by subtracting the cost to manufacture of goods sold
2  plus 10% of the manufacturing cost for factory overhead, from the sales price obtained
3  (typically the sales price to the retailer or distributor i.e. the wholesale price). In addition,
4  Plaintiff agreed that it would be responsible for all of its own design costs, including design
5  time, prototypes created in the U.S. and its own administrative overhead and expenses,
6  including travel expenses to Hong Kong and China. Once in China, Mr. Wang explained to
7  Plaintiff that his factory would provide all the prototyping and help needed to execute
8  Plaintiff's ideas and would further provide Plaintiff with all room and board necessary while
9  there.

10  124. Over time, the agreement between Plaintiff and Defendants broadened to include Plaintiff
11  creating component parts for existing and new lines of furniture sold by Defendants. It was
12  agreed that Plaintiff would receive a fixed royalty per piece of furniture sold worldwide by
13  Defendants which included components designed by Plaintiff. The royalty to be paid to
14  Plaintiff per item of furniture sold containing component parts created by Plaintiff was to be
15  negotiated at the time each item was created. For example for Plaintiff's "kiddy lock" or the
16  639 Patent, it was agreed that Plaintiff would receive a flat royalty of $.05 per chair
17  Defendants sold equipped with this component. For the "adult safety lock" or the 079 Patent,
18  Plaintiff originally requested from Defendants, on several occasions prior to it being sold, a
19  flat royalty of $.15 per chair sold. After sales were reported to Plaintiff and royalties were
20  due, Defendants only wanted to pay a royalty of $.05 per chair and withheld royalty payments
21  to Plaintiff. In good faith and as a conciliatory effort by Plaintiff to get paid, it requested a
22  compromised royalty of $.10 per chair so equipped with the 079 Patent. This $.10 per chair
23  royalty amount for any chairs equipped with the 079 Patent was agreed to by both parties on
24  March 13, 2002. Plaintiff further received a flat royalty of $.15 per chair for chairs sold with
25  its new "swirl" armrest designs.

26  125. It was further agreed that Plaintiff would be provided a complete accounting for all its
27  creations, and then payment was to be made to the Plaintiff for its share of the profits and
28

ROSACK,
PINTER &
MOORE
244 California St,
Suite 300
S.P. CA. 94111

27

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

12/06/2007  11:44  3.  332664                    KERRI CAMF   .NC                    PAGE  42

1    royalties (hereafter referred to simply as "royalties") at the end of each year or by January 1st

2    of the following year.

3  126. On or about April 4, 1996, Roger Hill, on behalf of Plaintiff, sent a written confirmation of

4    the above agreement to Michael Wang via fax, to his home in Woodside, CA.

5  127. As the scope of the initial engagement broadened to include not just designs for new

6    outdoor furniture lines, but also designs for component parts to be included on existing and

7    new lines of outdoor furniture, the parties sent correspondence back and forth confirming the

8    extension of the initial agreement to additional services.

9  128. Together with the initial correspondence dated, April 4, 1996, the additional correspondence

10    between the parties comprised the contract and terms of engagement entered into.

11  129. Plaintiff has performed all conditions, covenants, and promises required on his/her/its part to

12    be performed in accordance with the terms and conditions of the contract.

13  130. Defendants breached the contract by failing to provide Plaintiff with compensation as

14    agreed for the use of outdoor furniture designs and components created by Plaintiff, by failing

15    to provide accurate accounting to Plaintiff, and by selling outdoor furniture designs and

16    components copyrighted and components utility patented by Plaintiff, without Plaintiff's

17    consent.

18  131. Beginning on or about June 22, 2002 Defendant Michael Wang fraudulently told Plaintiff

19    that defendants were no longer producing Plaintiff's creations since Casual Living Worldwide

20    has taking over designing their furniture lines. Defendants continued to produce Plaintiff's

21    creations even after this date, without payment to Plaintiff, and in breach of the contract sued

22    on herein.

23  132. As a result of Defendants' breach of the contract, Plaintiff has been damaged in a sum

24    according to proof at the time of trial.

25

**FIFTH CAUSE OF ACTION**
**BREACH OF ORAL CONTRACT**
**(AGAINST ALL DEFENDANTS AND DOES 1 TO 500)**

26

27  133. Plaintiff hereby restates paragraphs 1 through 132, and by this reference incorporates and

28    makes a part hereof, the allegations contained therein as though fully restated below.

ROSACK,
PINTER &
MOORE
244 California St,
Suite 300
S.F. CA. 94111                          28

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

1   134. On or about April 3, 1996, Defendant Michael Wang as President and General Manager of

2       Shen-Tai Industries. Co., Ltd. approached Steven and Roger Hill, the principals of Plaintiff,

3       about the possibility of Plaintiff designing outdoor furniture for Defendants in the U.S. market

4       and abroad. Mr. Wang proposed that Plaintiff create designs for use by Defendants, and that

5       if the designs were successful, they could make a great deal of money.

6   135. The terms proposed and agreed to at that meeting were as follows: Defendants would split

7       all profits with Plaintiff, on any new outdoor furniture creations by Plaintiff, sold anywhere in

8       the world. Profit was to be calculated by subtracting the cost to manufacture of goods sold

9       plus 10% of the manufacturing cost for factory overhead, from the sales price obtained

10      (typically the sales price to the retailer or distributor i.e. the wholesale price). In addition,

11      Plaintiff agreed that it would be responsible for all of its own design costs, including design

12      time, prototypes created in the U.S. and its own administrative overhead and expenses,

13      including travel expenses to Hong Kong and China. Once in China, Mr. Wang explained to

14      Plaintiff that his factory would provide all the prototyping and help needed to execute

15      Plaintiff's ideas and would further provide Plaintiff with all room and board necessary while

16      there. At that time and place, Plaintiff and Defendants entered into a binding oral agreement.

17  136. Plaintiff has performed all conditions, covenants, and promises required on his/her/its part to

18      be performed in accordance with the terms and conditions of the contract.

19  137. Defendants breached the contract by failing to provide Plaintiff with compensation as

20      agreed for the use of furniture designs and components created by Plaintiff, by failing to

21      provide accurate accounting to Plaintiff, and by selling outdoor furniture and components

22      containing technology transfer, trade secrets, utility patent and copyrights by Plaintiff, without

23      Plaintiff's consent.

24  138. Beginning on or about June 22, 2002 Defendant Michael Wang fraudulently told Plaintiff

25      that defendants were no longer producing Plaintiff's creations since Casual Living Worldwide

26      has taking over designing their furniture lines. Defendants continued to produce Plaintiff's

27      creations even after this date, without payment to Plaintiff, and in breach of the contract sued

28      on herein.

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111

29

Complaint Hill Design Group v. Shen-Tai Industries Ltd, et.al.

1   139.  As a direct and proximate result of defendants' Breach of the oral agreement sued on herein,

2         Plaintiff has been damaged in a sum according to proof at the time of trial.

3                                 SIXTH CAUSE OF ACTION
                             BREACH OF IMPLIED IN FACT CONTRACT
4                         (AGAINST ALL DEFENDANTS AND DOES 1 TO 500)

5   140.  Plaintiff hereby restates paragraphs 1 through 139, and by this reference incorporates and

6         makes a part hereof, the allegations contained therein as though fully restated below.

7   141.  On or about April 3, 1996, Defendant Michael Wang as President and General Manager of

8         Shen-Tai Industries. Co., Ltd. approached Steven and Roger Hill; the principals of Plaintiff,

9         about the possibility of Plaintiff designing outdoor furniture for Defendants in the U.S. market

10        and abroad.  Mr. Wang proposed that Plaintiff create designs for use by Defendants, and that

11        if the designs were successful, they could make a great deal of money.

12  142.  The terms proposed and agreed to at that meeting were as follows:  Defendants would split

13        all profits with Plaintiff, on any new outdoor furniture creations by Plaintiff, sold anywhere in

14        the world.  Profit was to be calculated by subtracting the cost to manufacture of goods sold

15        plus 10% of the manufacturing cost for factory overhead, from the sales price obtained

16        (typically the sales price to the retailer or distributor i.e. the wholesale price).  In addition,

17        Plaintiff agreed that it would be responsible for all of its own design costs, including design

18        time, prototypes created in the U.S. and its own administrative overhead and expenses,

19        including travel expenses to Hong Kong and China.  Once in China, Mr. Wang explained to

20        Plaintiff that his factory would provide all the prototyping and help needed to execute

21        Plaintiff's ideas and would further provide Plaintiff with all room and board necessary while

22        there.  At that time and place, Plaintiff and Defendants entered into a binding oral agreement.

23  143.  Plaintiff has performed all conditions, covenants, and promises required on his/her/its part to

24        be performed in accordance with the terms and conditions of the contract.

25  144.  Defendants breached the contract by failing to provide Plaintiff with compensation as

26        agreed for the use of furniture designs and components created by Plaintiff, by failing to

27        provide accurate accounting to Plaintiff, and by selling outdoor furniture and components

28

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 26111

                                    30

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

1  containing technology transfer, trade secrets, utility patent and copyrights by Plaintiff, without

2  Plaintiff's consent.

3  145.  Beginning on or about June 22, 2002 Defendant Michael Wang fraudulently told Plaintiff

4  that defendants were no longer producing Plaintiff's creations since Casual Living Worldwide

5  has taking over designing their furniture lines.  Defendants continued to produce Plaintiff's

6  creations even after this date, without payment to Plaintiff, and in breach of the contract sued

7  on herein.

8  146.  At the instance and request of Defendants, Plaintiff submitted to Defendants, orally and in

9  writing, new designs for outdoor furniture sales, and components to be added to existing and

10  new designs, with the expectation, which was fully and clearly understood by Defendants, that

11  Plaintiff would be compensated for its use by Defendants when and if Defendants used it.

12  Securing intellectual property rights for any such creations by Plaintiff was never a condition

13  of the agreement or of receiving compensation from Defendants just as many of Defendants'

14  products do not have intellectual property protection.

15  147.  As a direct and proximate result of Defendants' breach of the implied in fact agreement sued

16  on herein, Plaintiff has been damaged in a sum according to proof at the time of trial.

17  **SEVENTH CAUSE OF ACTION**
18  **CONSPIRACY TO INDUCE BREACH OF CONTRACT**
  **(AGAINST ALL DEFENDANTS AND DOES 1 TO 500)**

19  148.  Plaintiff hereby restates paragraphs 1 through 147, and by this reference incorporates and

20  makes a part hereof, the allegations contained therein as though fully restated below.

21  149.  On or about April 3, 1996, Defendant Michael Wang as President and General Manager of

22  Shen-Tai Industries. Co., Ltd. approached Steven and Roger Hill, the principals of Plaintiff,

23  about the possibility of Plaintiff designing outdoor furniture for Defendants in the U.S. market

24  and abroad.  Mr. Wang proposed that Plaintiff create designs for use by Defendants, and that

25  if the designs were successful, they could make a great deal of money.

26  150.  The terms proposed and agreed to at that meeting were as follows:  Defendants would split

27  all profits with Plaintiff, on any new outdoor furniture creations by Plaintiff, sold anywhere in

28  the world.  Profit was to be calculated by subtracting the cost to manufacture of goods sold

ROSACK,
PINTER &
MOORE
244 California St.
Suite 200
S.F. CA. 94111

31

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

1    plus 10% of the manufacturing cost for factory overhead, from the sales price obtained
2    (typically the sales price to the retailer or distributor i.e. the wholesale price). In addition,
3    Plaintiff agreed that it would be responsible for all of its own design costs, including design
4    time, prototypes created in the U.S. and its own administrative overhead and expenses,
5    including travel expenses to Hong Kong and China. Once in China, Mr. Wang explained to
6    Plaintiff that his factory would provide all the prototyping and help needed to execute
7    Plaintiff's ideas and would further provide Plaintiff with all room and board necessary while
8    there. At that time and place, Plaintiff and Defendants entered into a binding oral agreement.
9    151. Plaintiff has performed all conditions, covenants, and promises required on his/her/its part to
10   be performed in accordance with the terms and conditions of the contract.
11   152. On or about January 1, 2000, Defendants, and each of them, knowingly and willfully
12   conspired and agreed among themselves to damage the Plaintiff by depriving him/her of the
13   benefits of this contract by inducing Shen-Tai to breach said contract.
14   153. Plaintiff is informed and believes and thereon alleges that Defendants have conspired over a
15   period of years, to defraud Plaintiff of royalties, and earnings on its creations covered by
16   technology transfer, trade secret, patents and copyrights belonging to Plaintiff, by
17   underreporting sales, not reporting sales, and utilizing Plaintiff's designs without permission
18   of Plaintiff.
19   154. As a proximate result of Defendants' wrongful acts pursuant to the conspiracy herein
20   alleged, Shen-Tai, did wrongfully breach its contract with the Plaintiff by failing to provide
21   Plaintiff with compensation as agreed for the use of outdoor furniture designs and components
22   created by Plaintiff, by failing to provide accurate accounting to Plaintiff, and by selling
23   outdoor furniture and components containing technology transfer, trade secret, patents and
24   copyrights by Plaintiff, without Plaintiff's consent, while fraudulently denying that they were
25   doing so.
26   155. As a direct and proximate result of the wrongful acts pursuant to the conspiracy herein
27   alleged, Plaintiff has been generally damaged in a sum according to proof at the time of trial.
28

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

156. In doing the things herein alleged, Defendants acted with malice, oppression, and fraud as defined under Civ. Code § 3294(c). Defendants were therefore guilty of malice and oppression and fraud in conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

## EIGHTH CAUSE OF ACTION
## FRAUD AND DECEIT--INTENTIONAL MISREPRESENTATION OF FACT
### (AGAINST ALL DEFENDANTS AND DOES 1 TO 500)

157. Plaintiff hereby restates paragraphs 1 through 156, and by this reference incorporates and makes a part hereof, the allegations contained therein as though fully restated below.

158. On or about March 31, 1998, Defendant Michael Wang advised Plaintiff that he would compensate Plaintiff according to the agreed terms of the contract first entered into on or about April 3, 1996, and began paying royalties from Plaintiff's creations sold during the 1997 season. Thereafter, as Plaintiff continued to perform under the contract described above, Michael Wang, on behalf of Defendants, and each of them represented that he would provide Plaintiff with accurate information regarding sales of products by Shen-Tai using Plaintiff's designs and components.

159. For the 1999 season Defendant Michael Wang told Plaintiff that no sales were made and therefore no royalties were due for any of Plaintiff's creations. Thereafter, after Shen-Tai began using Plaintiff's outdoor furniture and component parts designs while failing to pay Plaintiff as agreed, Michael Wang, on behalf of Shen-Tai, and in furtherance of a conspiracy to defraud Plaintiff then stated on June 22, 2002 that Shen-Tai was no longer using any designs created by Plaintiff. Even as to sums that were agreed by the Defendants were owing to Plaintiff, Defendant Michael Wang represented could not be paid at that time because Defendants were being investigated by the Taiwanese IRS; then they were going to arbitration and needed that to settle before paying; once defendants advised they settled with the Taiwanese IRS, they claimed they did not have the money to pay Plaintiff; then they claimed they applied for a bank line of credit that was approved, then denied. Plaintiff appealed to Defendant Mia Wang (Defendant Michael Wang's wife), who is Shen Tai's Vice President

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111

33

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

12/06/2007  11:44   3.  532664              KERRI CAMP    INC                    PAGE  48

1   and heads their San Sky Hong Kong office – who stated that she did not know why Michael
2   Wang and Shen Tai were not paying Plaintiff, but further reassured them that they would be
3   paid eventually. Defendant Michael Wang later advised Plaintiff that their attorney advised
4   them that they could only pay Plaintiff for royalties covered by patented items. Michael Wang
5   then told plaintiff that his mother, the CEO of Shen-Tai refused to pay the amounts then due
6   and owing.  So Plaintiff personally met with Spring Wang, the CEO of Shen-Tai, who told
7   Plaintiff that it should get paid but that she needed to confirm the details with her son,
8   Michael Wang. Defendant Michael Wang then states that Plaintiff must have said something
9   wrong to his mother because now she refuses to pay, that he had $65,000 ready to send to
10  Plaintiff but now his mother put a stop on it until she can go back to Taiwan to personally
11  review the matter and see how much she wants to pay. Moreover, despite repeated statements
12  by Defendants that they were no longer using Plaintiff's designs, in fact Defendants continued
13  to use Plaintiff's designs after being sent cease and desist letters.

14  160. The representations made by Defendants were in fact false. The true facts were that
15  Defendant Shen-Tai had intended not to compensate Plaintiff as agreed on the contract despite
16  accepting the terms of the contract and advising Plaintiff that they would do so before Plaintiff
17  provided Defendants with their outdoor furniture and component parts designs.  Moreover,
18  Defendants were withholding payments, while doctoring records of sales worldwide so as to
19  defraud Plaintiff of royalties due on sales containing Plaintiff's designs.  Moreover,
20  Defendants were still using Plaintiff's designs in outdoor furniture and components even after
21  Plaintiff revoked all rights of use by Defendants, while simultaneously telling Plaintiff that
22  they had ceased use of Plaintiff's designs.

23  161. Moreover the excuses for failure to pay sums due as described above, and the failure to
24  allow for proper accounting were part of Defendants' fraudulent scheme to cheat Plaintiff of
25  royalties and earnings.

26  162. When Defendant Michael Wang made these representations above on behalf of all
27  Defendants, he knew them to be false and made these representations with the intention to

28

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111

34

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

1   deceive and defraud Plaintiff and to induce Plaintiff to act in reliance on these representations
2   in the manner hereafter alleged, or with the expectation that Plaintiff would so act.

3   163. Plaintiff, at the time these representations were made by Defendant and at the time Plaintiff
4   took the actions herein alleged, was ignorant of the falsity of Defendant's representations and
5   believed them to be true.

6   164. In reliance on these representations, Plaintiff was induced to and did enter into a contract
7   with Defendants to provide Defendants with designs for outdoor furniture and component
8   parts initially.

9   165. Thereafter in reliance on the representations of Defendants described above, Plaintiffs
10  waited for payment, and continued to allow Defendants to use their designs.

11  166. Thereafter in reliance upon the representations above, Plaintiff accepted as true the
12  representations that Defendants had ceased use of their designs, and continued to negotiate for
13  a resolution of the accounting issues for past royalties, without taking steps to prevent their
14  designs from being used on furniture that had yet to be shipped and sold.

15  167. Had plaintiff known the actual facts, it would not have agreed to enter into the contract with
16  Defendants in the first place, and thereafter would have terminated the contract earlier,
17  thereby protecting its intellectual property from theft, and thereafter sought injunctive relief to
18  prevent the theft of its intellectual property, and to obtain accurate accounting information.

19  168. Plaintiff's reliance on Defendant's representations was justified because Plaintiff had no
20  reason to believe that the Defendants intended to defraud them of royalties on sales and or to
21  steal Plaintiff's designs and or to use Plaintiff's designs without Plaintiff's consent.

22  169. As a proximate result of the fraudulent conduct of Defendant(s) as herein alleged, Plaintiff
23  has been defrauded of royalties due it, on sales by Defendants under the contract, and by sales
24  by Defendants using Plaintiff's designs without Plaintiff's consent, by reason of which
25  Plaintiff has been damaged in a sum according to proof at the time of trial.

26  170. The aforementioned conduct of Defendants was an intentional misrepresentation, deceit, or
27  concealment of a material fact known to the Defendants with the intention on the part of the
28  Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111

35

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.ol.

1    injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in

2    conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive

3    damages.

4                              NINTH CAUSE OF ACTION
              FRAUD AND DECEIT--NEGLIGENT MISREPRESENTATION OF FACT
5                     (AGAINST ALL DEFENDANTS AND DOES 1 TO 500)

6    171.  Plaintiff hereby restates paragraphs 1 through 170, and by this reference incorporates and

7    makes a part hereof, the allegations contained therein as though fully restated below.

8    172.  When Defendant Michael Wang made these representations, he had no reasonable ground

9    for believing them to be true in that he knew or should have known that Defendants were

10   continuing to use Plaintiff's designs when he advised Plaintiff that Defendants had ceased

11   using them.  He knew or should have known that sales involving plaintiff's designs were

12   under reported, and/or not reported at all.  He knew or should have known that the excuses he

13   continued to make for failing to pay royalties due and owing to Plaintiff were not true, and

14   that Plaintiff would be harmed by his continued refusal to pay royalties and fees to Plaintiff

15   which were due.  He knew or should have known that Defendants were infringing upon

16   Plaintiff's technology transfer, trade secrets, patents and copyrighted material when he

17   advised Plaintiff's they were not due any further royalties for products sold, and when he

18   advised Plaintiff as to the total sales involving their designs.

19   173.  Defendant made these representations with the intention of inducing Plaintiff to act in

20   reliance on these representations in the manner hereafter alleged, or with the expectation that

21   Plaintiff would so act.

22                              TENTH CAUSE OF ACTION
                   FRAUD AND DECEIT--SUPPRESSION OF FACT
23                     (AGAINST ALL DEFENDANTS AND DOES 1 TO 500)

24   174.  Plaintiff hereby restates paragraphs 1 through 173, and by this reference incorporates and

25   makes a part hereof, the allegations contained therein as though fully restated below.

26   175.  On or about March 20, 2003 Defendant Michael Wang attempted to bully Plaintiff into

27   accepting $65,000 compensation and terminating the contract entered into described more

28   fully above based upon sales of Shen-Tai products based upon designs by Plaintiff, while

ROSACK,
PINTER &
MOORE
244 California St.                                  36
Suite 300
S.F. CA, 94111   Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

1   suppressing information and facts about actual sales and suppressing facts that Defendants

2   were continuing to utilize Plaintiff's designs without their permission.  Said facts were known

3   to Defendants at all times herein mentioned. The suppression of these facts was likely to

4   mislead Plaintiff and did in fact mislead Plaintiff in the light of the other representations made

5   by Defendant.

6   176.  The representations and failures to disclose information and suppressions of information

7      herein alleged to have been made by Defendant Michael Wang on behalf of Defendants and

8      each of them were made with the intent to induce Plaintiff to act in the manner herein alleged

9      in reliance thereon.

10  177.  Plaintiff, at the time these failures to disclose and suppressions of facts occurred, and at the

11     time Plaintiff took the actions herein alleged, was ignorant of the existence of the facts which

12     Defendant suppressed and failed to disclose. If Plaintiff had been aware of the existence of the

13     facts not disclosed by Defendants, Plaintiff would have terminated the contract between

14     Plaintiff and Defendants and would have sought remedies to limit its damages and to prevent

15     Defendants further theft and unauthorized use of its designs, and would have taken legal steps

16     to obtain an accounting of all sales by Defendants using its designs.

17  178.  Plaintiff was justified in relying upon Defendant Michael Wang's representations that

18     Defendants and each of them would honor the contract sued on herein, and that Defendants

19     were no longer using Plaintiff's designs when it became apparent that Defendants were not

20     going to honor the contract without legal action.

21                          **ELEVENTH CAUSE OF ACTION**
22          **TEMPORARY AND PERMANENT INJUNCTIVE RELIEF FOR PROHIBITED**
            **BUSINESS PRACTICE -- BUSINESS AND PROFESSIONS CODE § 17200 et. seq.**
23                    **(AGAINST ALL DEFENDANTS AND DOES 1 TO 500)**

24  179.  Plaintiff hereby restates paragraphs 1 through 178, and by this reference incorporates and

25     makes a part hereof, the allegations contained therein as though fully restated below.

26  180.  On or about April 3, 1996, Plaintiff entered into a contract with Defendants, and each of

27     them to provide outdoor furniture designs to Defendants for sale in the U.S. and abroad.  This

28     agreement grew to include component parts designed by Plaintiff for use on outdoor furniture.

ROSACK,
PINTER &
MOORE
244 California St,                                            37
Suite 300
S.F. CA, 94111  Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

1    Following several years of reported sales by Defendants, and remuneration to Plaintiff in

2    accordance with the contract, described more fully above, Defendants began systematically

3    under reporting sales of products using Plaintiff's designs, failing to report sales all together,

4    and falsely stating that Defendants were not in fact using Plaintiff's designs at all when in fact

5    they were.  Moreover Defendants continued to use Plaintiff's creations for outdoor furniture

6    and component parts even after they had no right to do so, and were in fact infringing upon

7    Plaintiff's patents and copyrights.

8    181.  Plaintiff is informed and believes and thereon alleges that Defendants performed the above-

9    mentioned act(s) for the purpose of defrauding Plaintiff of earned royalties on sales using

10   Plaintiff's designs.

11   182.  Defendants have continued to violate Plaintiff's technology transfer, trade secrets, patents

12   and copyrights, despite being advised that they were not authorized to use said creations and

13   will continue to do so unless restrained.

14   183.  As a proximate result of the above-mentioned acts of Defendants, Plaintiff has been

15   deprived of the royalties due and owing pursuant to the terms of the contract between the

16   parties, in a sum according to proof at the time of trial, which should be trebled.

17
                              **DEMAND FOR JURY TRIAL**
18
     Plaintiff demands a trial by jury on all claims.
19
                              **PRAYER FOR RELIEF**
20
     WHEREFORE, Plaintiff requests entry of judgment in its favor and against Defendants and each
21   of them as follows:

22   **As To Causes Of Action One And Two For Patent Infringement**

23   1.  For entry of a judgment declaring that Defendants have directly and/or indirectly infringed
24       one or more claims of the 639 Patent;

25   2.  For entry of a judgment declaring that Defendants have directly and/or indirectly infringed
         one or more claims of the 079 Patent;
26

27   3.  For preliminary and permanent injunctive relief restraining and enjoining Defendants and
         its officers, agents, servants, employees, attorneys, and those persons in active concert or
28       participation with them who receive actual notice of the order by personal service or

ROSACK,
PINTER &
MOORE
244 California St,
Suite 300
S.F. CA. 94111

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.                    38

1   otherwise, from (a) any further infringement of the 639 Patent and (b) any further
2   infringement of the 079 Patent;

3   4.  For damages to compensate Plaintiff for Defendants' infringement, pursuant to 35 U.S.C.
      § 284, said damages to be trebled because of Defendants' willful infringement;
4
5   5.  That Plaintiffs be awarded their actual damages and/or a disgorgement of Defendants'
      profits, direct and indirect, for Defendants' copyright infringements in an amount to be
6     determined at trial or in lieu thereof, should Plaintiffs or any of them so elect, an award of
      statutory damages, pursuant to 17 U.S.C. § 504(c), against each Defendant, to be increased
7     to the maximum permitted by law, for their acts of willful infringement;

8   6.  For an award of pre-judgment and post-judgment interest and costs to Defendants in
      accordance with 35 U.S.C. § 284;
9

10  7.  For an award of Plaintiff's reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

11  8.  For such other and further relief as the court may deem just and fair.

12  **As To The Third Causes Of Action For Copyright Infringement**

13  1.  That the Court issue preliminary and permanent injunctions restraining Defendants their
      agents, servants, employees, representatives, successors, and assigns, and all other
14    persons, firms or corporations acting in concert, privity or participation with them from:

15      a.  Reproducing, copying, duplicating, disseminating, publishing, transmitting,
          distributing, displaying, storing, uploading, downloading, offering or making
16        available any unauthorized copies of Plaintiff's furniture designs, in whole or in
          part.
17

18      b.  Assisting, aiding or abetting any other person or business entity from engaging in
          or performing any of the above-described acts; and
19

20      c.  That the Court issue an order requiring each of the Defendants to file with this
          Court and serve on Plaintiffs within ten (10) days after service of the preliminary
21        injunction, a report, in writing, under oath, setting forth in detail the manner and
          form in which the Original Defendants have complied with the preliminary
22        injunction;

23
24  2.  That the Court issue an Order impounding for the duration of this action any materials
      found to have been made or used by the Defendants in violation of Plaintiffs' exclusive
25    rights and that all such impounded materials be destroyed as part of a final judgment or
      decree pursuant to 17 U.S.C. § 503;
26

27  3.  That Plaintiffs be awarded their actual damages and/or a disgorgement of Defendants'
      profits, direct and indirect, for Defendants' copyright infringements in an amount to be
28    determined at trial or in lieu thereof, should Plaintiffs or any of them so elect, an award of

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111                                         39

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

1 statutory damages, pursuant to 17 U.S.C. § 504(c), against each defendant, to be increased
2 to the maximum permitted by law, for their acts of willful infringement;

3 4. That the Court issue an order requiring the Defendants to file with this Court and serve on
4 Plaintiffs within ten (10) days after service of the permanent injunction, a report, in
5 writing, under oath, setting forth in detail the manner and form in which Defendants have
complied with the permanent injunction;

6 5. That the Court award Plaintiffs their costs, including attorneys' fees, pursuant to 17 U.S.C.
§ 505; and

7 6. That the Court grant such other and further relief as it deems just and proper.

8 **As To The Fourth Through The Sixth Causes Of Action For Breach Of Contract**
9
10 1. For compensatory damages in a sum according to proof at the time of trial.

11 2. For pre and post judgment interest in a sum according to proof at the time of trial

12 3. That the Court grant such other and further relief as it deems just and proper.

13 **As To The Seventh Cause Of Action For Conspiracy To Induce Breach Of Contract**

14 1. For general damages in a sum according to proof at the time of trial;

15 2. For special damages in a sum according to proof at the time of trial;

16 3. For exemplary or punitive damages;

17 4. That the Court grant such other and further relief as it deems just and proper.

18 **As To The Eighth Through The Tenth Causes Of Action For Fraud**

19 1. For general damages in a sum according to proof to be proven at the time of trial;

20 2. For special damages in a sum according to proof to be proven at the time of trial;

21 3. For interest as allowed by law;

22 4. For punitive and exemplary damages;

23 5. For costs of suit herein incurred;

24 6. For attorney's fees;

25 7. For such other and further relief as the court may deem proper.

26 **As To The Eleventh Cause Of Action For Unfair Business Practices**

27 1. For an order requiring Defendants, and each of them, to show cause, if any they have, why
28 they should not be enjoined as set forth below, during the pendency of this action;

ROSACK,
PINTER &
MOORE
244 California St.
Suite 300
S.F. CA. 94111

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

40

a. For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendants from selling any items of furniture using Plaintiff's designs.

2. For trebled damages in a sum according to proof at the time of trial;

3. For reasonable attorney's fees in a sum according to proof at the time of trial;

4. For his/her costs incurred; and

5. For any other and further relief as the court may deem proper.

Dated:      February 9, 2004

By:  Rosack, Pinter & Moore, P.C.

Thomas A. Moore
Attorneys for Plaintiff
Hill Design Group

Complaint Hill Design Group v. Shen-Tai Industries Ltd. et.al.

# EXHIBIT

# B



Case 5:04-cv-00521-JF    Document 105    Filed 03/07/2007    Page 1 of 3

1

2                                                              **E-Filed 3/7/2007**

3

4

5

6

7

8                               NOT FOR CITATION

9                     IN THE UNITED STATES DISTRICT COURT

10                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                              SAN JOSE DIVISION

12

13    HILL DESIGN GROUP,

14                    Plaintiff,                    Case Number C 04-0521 JF

15              v.                                  JUDGMENT[1]

16    SPRING WANG, et al.,

17                    Defendants.

18

19        Plaintiff's motion for default judgment having been granted, IT IS HEREBY ORDERED,

20    DECREED, AND ADJUDGED that:

21    1.    Defendants are liable individually and collectively, jointly and severally for damages in

22          the total amount of $49,390,410.00.

23    2.    Defendants are liable individually and collectively, jointly and severally for prejudgment

24          interest at a rate of 10 percent per annum, on the total damages award accruing from the

25          date of service of the Complaint until the entry of judgment.

26    3.    Plaintiff is entitled to an award of attorneys fees and costs in the amount of $315,015.28.

27    _____

28        [1] This disposition is not designated for publication and may not be cited.

Case No. C 04-0521 JF
JUDGMENT
(JFLC1)

Case 5:04-cv-00521-JF    Document 105    Filed 03/07/2007    Page 2 of 3

4.    Plaintiff is entitled to injunctive relief as detailed in the order granting the motion for default judgment, filed March 2, 2007.

IT IS SO ORDERED.

DATED: March 7, 2007.

JEREMY FOGEL
United States District Judge

Case No. C 04-0521 JF
JUDGMENT
(JFLC1)

Case 5:04-cv-00521-JF    Document 105    Filed 03/07/2007    Page 3 of 3

1    This Judgment has been served upon the following persons:

2    Thomas Allen Moore            tom@noveckandmoore.com

3    Julianne Pinter               juliannepinter@sbcglobal.net, karen@rpmlegal.com

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit B**

RECEIVED                                                   POS-015

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Thomas A. Moore                                                sb 148698<br>Noveck & Moore<br>1622 Ellsmere Ave<br>Los Angeles CA 90019<br>TELEPHONE NO.: (650) 575-4991        FAX NO. *(Optional)*: (650) 887-0402<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Mia Kim | FOR COURT USE ONLY<br><br>2008 FEB -8 P 1: 1?<br><br>KRI A. Has [illegible] |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
STREET ADDRESS: 191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose CA 95113
BRANCH NAME:

PLAINTIFF/PETITIONER: Mia Kim

DEFENDANT/RESPONDENT: Law Office of Paul Gumina, et.al.

| | |
|---|---|
| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>1-07-CV-100101 |

TO *(insert name of party being served)*: Paul Gumina

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: January 30, 2008

Thomas A. Moore
_____(TYPE OR PRINT NAME)_____        _____(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)_____

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [✓]  A copy of the summons and of the complaint.
2. [✓]  Other *(specify)*:
   Civil Case Cover Sheet; Civil Lawsuit Notice; ADR Information Sheet

*(To be completed by recipient)*:

Date this form is signed: 2/6/08

Paul L. Gumina, individually and on behalf of Law Offices of Paul L. Gumina, A.C.
_____(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,_____        _____(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                                                ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

**Exhibit C**

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Thomas A. Moore                                          sb 148698<br>Noveck & Moore<br>1622 Ellsmere Ave<br>Los Angeles CA 90019<br><br>TELEPHONE NO.: (650) 575-4991    FAX NO. *(Optional)*: (650) 887-0402<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Mia Kim | ENDORSED<br><br>2008 FEB -8 P 1:14<br><br>A. Ilas |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara |
|---|
| STREET ADDRESS: 191 North First Street |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: San Jose CA 95113 |
| BRANCH NAME: |

| PLAINTIFF/PETITIONER: Mia Kim | |
|---|---|
| DEFENDANT/RESPONDENT: Law Office of Paul Gumina, et.al. | |
| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>1-07-CV-100101 |

TO *(insert name of party being served)*: Charles Law

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: January 30, 2008

Thomas A. Moore
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF SENDER--MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [✓]  A copy of the summons and of the complaint.
2. [✓]  Other *(specify)*:
   Civil Case Cover Sheet; Civil Lawsuit Notice; ADR Information Sheet

*(To be completed by recipient)*:

Date this form is signed:

Charles Law
_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

_____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.USCourtForms.com |

**Exhibit D**

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Thomas A. Moore                   sb 148698<br>Noveck & Moore<br>1622 Ellsmere Ave<br>Los Angeles CA 90019<br><br>TELEPHONE NO.: (650) 575-4991    FAX NO. *(Optional):* (650) 887-0402<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Mia Kim | ENDORSED<br><br>2008 FEB -8 P 1: 13 |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
STREET ADDRESS: 191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose CA 95113
BRANCH NAME:

PLAINTIFF/PETITIONER: Mia Kim

DEFENDANT/RESPONDENT: Law Office of Paul Gumina, et.al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER<br>1-07-CV-100101 |
|---|---|

TO *(insert name of party being served):* King & Wood LLP

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: January 30, 2008

Thomas A. Moore
(TYPE OR PRINT NAME)                           (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other *(specify):*
    Civil Case Cover Sheet; Civil Lawsuit Notice; ADR Information Sheet

*(To be completed by recipient):*

Date this form is signed:

ALEX WEI ZHANG  KING & WOOD LLP
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,        (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)        ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov
American LegalNet, Inc.
www.USCourtForms.com